GILBERT S. BENHAM ET AL. *vs.* BURTON D. POTTER ET AL.
WILLIAM F. DOWNER ET AL. *vs.* CHARLES F. CLARKE ET
AL.

Third Judicial District, New Haven, June Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Pursuant to statute (§ 2212), a town abolished its school districts and
assumed the maintenance of its schools. At its request the legis-
lature enacted a law (Special Laws of 1903, p. 260) which created
a board of finance, and provided that it should make, under proper
heads, estimates of the money necessary to be appropriated for the
expenses of the town, and of the rate of taxation, and lay such tax
as it should deem necessary therefor; and that such estimates
should be filed with the town clerk on or before October 1st, and
submitted to an adjourned annual town-meeting to be held at a
time and place fixed by the Act. It also prescribed that such
meeting should consider and act upon the estimates, and that the
appropriation and tax rate so reported by the board should be final
unless changed by a majority vote. The school committee was
required by the Act to furnish to the board an estimate of the ex-
penses of maintaining the schools, and such estimate was to be
reported by the board without change. *Held* : —
1. That the Act did not deprive the town of the power of making ap-
   propriations at special meetings, nor confine its action at such
   meetings to the confirmation or change of such appropriations as
   might be favorably reported by the board of finance.
2. That the Act did not preclude the town at its adjourned annual
   town-meeting from overriding the action of the board of finance
   and making an appropriation for building a schoolhouse, upon
   which the board had reported unfavorably.
3. That if any warning was necessary to enable the town to act within
   the limits prescribed by the Special Act, a notice to the effect that
   the meeting was called for the purpose, among others, of taking
   action upon the report of the board of finance was sufficient.
Section 2209 of the General Statutes, requiring a two-thirds vote in or-
   der to change the site of a schoolhouse, applies to school districts
   only, and not to a town which has abolished such districts and as-
   sumed the control and maintenance of all the schools therein.

Argued June 14th and 15th—decided August 12th, 1904.

SUITS to restrain the selectmen and town school committee
of Hamden from expending the funds of the town for cer-

tain purposes, and the latter from selling a schoolhouse and purchasing land for a new one, brought to the Superior Court in New Haven County.

The first case, Benham v. Potter, was tried to the court, *Case, J.*, and judgment rendered for the plaintiffs, from which the defendants constituting the town school committee appealed. *Error and judgment reversed.*

The second case, Downer v. Clarke, was reserved (*Ralph Wheeler, J.*) upon a demurrer to the complaint for the advice of this court, after a motion to dissolve the temporary injunction, made prior to the return-day, had been denied (*Gager, J.*). *Judgment sustaining demurrer advised.*

*Henry G. Newton* and *Charles F. Clarke*, for the defendants in each case.

*James H. Webb*, for the plaintiffs in each case.

PRENTICE, J.  The town of Hamden has, pursuant to statute (§ 2212), abolished the school districts within its limits and assumed the maintenance of the public schools therein.  In 1903 it procured the passage of an Act creating a department of finance in the town, defining its powers and duties and imposing certain limitations upon the powers commonly exercised by town meetings.  Special Acts of 1903, p. 260.  This department or board, as it is indiscriminately called in the Act, consists of six electors not officeholders.  It is directed to meet on the first Monday of September in each year, and may adjourn from time to time during the month.  At these meetings it is required to make and classify under appropriate heads and departments " estimates of the moneys necessary to be appropriated for the expenses " of the town for the ensuing year, and " of the rate of taxation required to meet the same," and lay such

Before argument of the second case in this court Mr. Webb, counsel for Downer *et al.*, called attention to certain irrelevant and improper matter in the brief of Messrs. Newton and Clarke, and moved that it be expunged, which motion was promptly granted.

tax as it shall deem necessary to meet such expenses. Notice is to be given each board or department of the town government of a time and place when and where an opportunity will be given to consider its needs. The estimates and rate recommended are to be filed in the office of the town clerk on or before October 1st, and the selectmen are commanded to submit the same to an adjourned annual town-meeting to be held at the usual place for such meetings on the second Monday of October at 2 P. M. The statute provides that said meeting "shall proceed to consider and act upon said estimates," and that "said appropriations and the rate of taxation so reported by said board shall be final, and shall be and remain the appropriations and the rate of taxation in the town of Hamden for the ensuing year, unless changed by a majority vote of the electors present at said meeting." The school committee is required to furnish said board an estimate of the expenses of maintaining the schools of the town, which estimate the board of finance is directed to report without change.

The board of finance duly met for the performance of its duties in September, 1903. The school committee presented its estimate for the expenses of school maintenance for the ensuing year as follows: "For schools in this town, $12,500; for high school expenses, $2,000; for new schoolhouse at Highwood, in addition to what the present school property there may be sold for, $9,000." The board filed its report and estimates with the town clerk on October 1st. Contained in the estimates were the two items for schools and high school expenses as asked for. The report stated that the advisability of building a new schoolhouse in Highwood and certain other matters had been duly considered, but that in view of more pressing needs the board was unable to recommend any appropriation therefor. A tax of 12½ mills was recommended.

At the adjourned annual town-meeting held at the time and place specified in the Act of 1903, the report of the board of finance was submitted and read, and it was voted that it be taken up item by item. In this connection it was

voted that the sum of $9,000 be appropriated for a new schoolhouse in Highwood. It was also voted to lay a 19-mill tax. The only notice contained in the warning of the meeting which is claimed to have been appropriate to said action, was notice that it was called, among other purposes, "to take action upon the report of the finance committee."

At this juncture the first of the above-entitled actions was instituted by certain resident taxpayers of the town to restrain the defendant selectmen and school committee from carrying out an alleged purpose on their part of acting under the assumed authority of said vote of appropriation, or otherwise, to purchase land and erect or contract for the erection of a new school building at Highwood. The complaint and judgment involve other matters which have ceased to have a present importance. Judgment as prayed for was rendered. The committeemen alone have appealed.

In March, 1904, the selectmen, upon the application of twenty qualified inhabitants, warned a special town-meeting to be held on March 16th at 8 P. M. One of the purposes specified in the warning was "to take action in reference to the purchase of land and the building of a new schoolhouse at some location in that part of the town known as Highwood." No meeting of the board of finance or action thereby upon the subject-matter in question preceded this meeting, save such as has already been recited. The special town-meeting, by a vote of 104 to 54, passed the following: "Voted, that the town school committee be, and they hereby are authorized and empowered to take any measures which they may deem appropriate for obtaining land for the site of a new schoolhouse in that part of the town of Hamden known as Highwood, and for building a schoolhouse thereon, and for said purposes to expend not exceeding $9,000 in addition to what the present school property in Highwood may be sold for, and to make any contracts appropriate for carrying this vote into effect."

There exists in Highwood a schoolhouse in which one of the public schools of the town was formerly conducted, be-

ing the schoolhouse of one of the school districts prior to the adoption of the consolidation system.

The second of the above-entitled actions immediately followed the vote of March 16th. The complaint recites the full history of the controversy from the beginning, as herein outlined, alleges that the school committee are, without authority, threatening to change the school site, to purchase land for a new site and erect a new schoolhouse thereon at a cost of $9,000 in excess of what may be obtained from the sale of the present school property, and prays that they may be enjoined from so doing. The defendants have demurred, and the questions of law thus raised have been reserved for our advice.

This demurrer presents in clear and distinct form the present contention between the parties. The technical issues involved in the appeal in the former case are necessarily somewhat different from those raised by the demurrer in the latter, since the former does not embrace the pertinent history which has since its institution been enacted. The real issues as to the rights and powers of the defendants, however, appear in the second case, and the ultimate outcome of the controversy must depend upon their decision. It will be helpful, therefore, to first consider these issues, and reserve for later inquiry any subordinate matters which bear peculiarly upon the appeal in the first action wherein judgment has been rendered.

The action which the demurrer admits that the defendant committee threaten to take on behalf of the town, consists of purchasing or otherwise acquiring a parcel of land for a schoolhouse location and erecting a schoolhouse thereon. These acts, which the committee assert their authority to do, involve (1) the right to have the moneys of the town expended for the purposes indicated, (2) the right of the committee to make the expenditure, and (3) the location of a schoolhouse in a place where none is or has been.

The annual meeting made an appropriation, in form, of $9,000 for a new schoolhouse in Highwood; the special meeting one of $9,000 in addition to the proceeds of the

sale of the existing site and property. The purpose of this last appropriation was extended so as to embrace the purchase of a site as well as the erection of the building. As this appropriation is the only one which is sufficiently comprehensive to furnish a justification for all the threatened expenditures, its legality and adequacy only need be now considered. The plaintiffs urge, (1) that the Act creating the department of finance has deprived the town of the power of making appropriations at special meetings, and (2) that it has deprived the town of the power of making any appropriations save upon the estimates and appropriations proposed and fixed by the board of finance in the manner prescribed by said Act.

We are unable to concur in either of these conclusions. It is unnecessary for our present purpose to inquire as to the extent of the power of adjourned annual meetings in the matter of appropriations. We are now concerned only with the power of special meetings. We fail to find anything, either in the letter or spirit of the Act, to warrant us in coming to the conclusion that the legislature ever intended to so strip the town of Hamden of the power which it has ever exercised, and which every other town exercises, to appropriate of its funds to meet necessities or for the common weal, that it can only do so upon a single day in the year, whatever the need and whatever the unanimity of the public will. It is inconceivable that any town in this State with the history and traditions which attach to our town organization should ask to have its time-honored powers so restricted, or that the General Assembly should seek to so restrict them, that it must face every situation or emergency, not foreseen or provided for at the adjourned annual town-meeting, in a condition of utter financial helplessness. The inhibition contended for would be so unreasonable in its character, so alien to all our conceptions of local town government, and so completely in derogation of the common right of Connecticut towns, that only clear and explicit language could furnish a justification for it. Such language, it is needless to say, is not found in the Act before us,

whose general purpose is apparent, although its provisions
and language to accomplish that purpose may not have been
happily chosen.

There remains to consider the power of special meetings
to make appropriations independently of action by the board
of finance.  Curiously enough, the powers and duties of the
board seem to be entirely confined to the original estimates
and appropriations to be submitted to and passed upon by
the adjourned annual meetings.  This may have been inten-
tional, but as special appropriations are not required to have
a greater than a majority vote, as might have been provided,
and are not forbidden, it is more than likely that the situa-
tion furnishes an instance of *casus omissus.*  However this
may be, it is quite clear that the powers which towns gen-
erally may exercise in town-meeting have not in terms been
withdrawn from the people of Hamden assembled in special
town-meeting, or limited, and there is nothing in the Act
from which such withdrawal or limitation can be fairly im-
plied.

The authority of the school committee, under the vote of
the special meeting, to act for the town in the expenditure
of any lawful appropriation then made, and in carrying out
the vote embodying it in so far as it was lawful, is clearly
established by the explicit terms of the vote, and we do not
understand this to be controverted.

The vote of the special meeting, in so far as it purported
to confer upon the committee authority to locate the new
schoolhouse upon a site to be selected and purchased by them,
is claimed to have been ineffective, for the reason that two-
thirds of those present and voting upon the resolution did
not vote in the affirmative.  This contention is based upon
§ 2209 of the General Statutes, which makes a two-thirds
vote necessary where a school district undertakes to fix or
change a schoolhouse site, and that provision of the so-called
Consolidation Act appearing in § 2212 of the General Statutes,
which prescribes that each town assuming the control of its
schools shall " constitute one school district, having all the
powers and duties of a school district."   The provision now

appearing in substance in § 2209 was a feature of the old school-society system and antedates the inauguration of both town control and the still more modern consolidation system. Public Acts of 1841, p. 52, Chap. 40; Public Acts of 1856, p. 39, Chap. 41; Public Acts of 1865, p. 107, Chap. 112. As it originally read, the failure of a district to obtain the necessary two-thirds vote simply resulted in a waiver of its privilege in favor of the society's committee, who might then act. So the law remained until the adoption of the town system, when the school visitors of the town were empowered to act in the event referred to. In 1868 this power was for some reason transferred to the school visitors of an adjoining town. Public Acts of 1868, p. 202, Chap. 102. In 1878 the present requirement for a conference with the school visitors of the town was inserted. Public Acts of 1878, p. 338, Chap. 124.

One significance of this history is found in the fact that the legislative restriction in question was one designed for the subordinate school district in whose meetings those having an immediate personal interest alone participated, and not for the larger corporate body—be it society or town—which was by law charged with the support of the schools within it. It has always appeared in the statutes, and still does, in connection with the laws regulating district organization. It has never appeared in connection with the regulations governing the consolidated town system. In each of the Revisions of 1875, 1888 and 1902, the statutes of the latter class have been carefully grouped into a separate chapter, and the statute in question is not among them. If it has any place in the consolidated system it is solely by reason of the language of § 2212, already quoted. Concerning the contention to this effect there are several observations which readily suggest themselves. In the first place the reason for the rule disappears with the abolition of the district system and its personally interested neighborhood control. In the second place a limitation such as is suggested upon the authority of towns to manage their own internal affairs is entirely out of harmony with our scheme of local

self-government. A provision that town meetings may not act by majorities, but only upon a two-thirds vote, and that a failure to obtain such a vote upon a matter of purely local concern shall operate as an abdication of authority in favor of the officials of another town, is too foreign to our notions of governmental propriety to be lightly entertained. Again, an examination of our statutes makes it clear that it was never intended that the language of § 2212 should have the effect of importing into the provisions of Chapter 136, to which it forms the introduction, all the limitations and conditions which are imposed upon school districts. This is suggested by the very language of the section, which indicates that it was concerned with powers and duties rather than with limitations and regulations. If it was intended that all the detail provisions applicable to districts should by force of the phrase in question be made applicable to towns, a curious medley of legislation would be presented. For instance, every school district is required to hold an annual meeting in June in each year; this meeting is required to be held at the district schoolhouse; a district committee of not more than three persons is required to be appointed; their term of office is one year from the July 15th succeeding their election. These and other provisions, found in Chapter 135 relating to school districts, clearly have no place in the consolidated town system concerning which Chapter 136 treats. To be sure the latter chapter contains provisions inconsistent therewith and calling for other procedure, but the phraseology employed unmistakably discloses that there was no legislative thought that, by constituting towns school districts with all their powers and duties, all the restrictions and regulations peculiar to the latter system were bodily injected into the new order, to be operative unless removed by other legislation. Still again, a prohibition against changing a schoolhouse site without a two-thirds vote of the district or town involves, as a necessary corollary, as we have held, a prohibition against the maintenance of schools at other places than upon the established sites. *Colt* v. *Roberts*, 28 Conn. 330. The

powers conferred upon towns and their committees, in § 2218, plainly negatives any such limitation upon town control. The duty imposed upon town school committees to maintain schools in various parts of the town, the absence of restriction as to place, and the authority expressly conferred to designate the schools which shall be attended by the children of the town, and even to arrange for their attendance without the town, are alike inconsistent with the restraint involved in § 2209. For all these reasons it is clear that this section has no relation to town control, and that the vote of March 16th, 1904, was not ineffective for the reason that two-thirds of the votes cast were not in the affirmative.

It is further suggested that the vote in question, in so far as it purports to authorize a change of site, was inoperative, because the warning specified no site which it was proposed to adopt, and because the vote departed from the warning in that the vote involves the sale and conveyance of the present school site, while the warning gives no notice of such intended action. The first objection calls for no further consideration than is implied from what has already been said about the relation of towns under the consolidation system to the education of the children therein and their powers in the matter. The force of the second arises from the assumption that the vote necessarily involves the sale and conveyance of the old site. Doubtless such sale and conveyance was contemplated as among the possibilities of the situation ; perhaps it was intended to be authorized ; perhaps it was thought that the school committee would, under the vote, have authority to act as the agents of the town for that purpose. However the fact may have been, the vote in its terms only empowers the committee to expend any possible proceeds from this source. If no sale is authorized, the committee will simply have no proceeds from that source to expend. If one is authorized but cannot be effected, the result is the same. If there is any authority to sell contained by implication or otherwise in the form of the vote, that provision is not so incorporated in or made a condition of the vote as that any invalidity with respect thereto

would defeat the entire vote. The sale and conveyance of the old site is not complained of as one of the acts threatened by the committee. Those which are complained of come within the authority of the vote, whatever may be said of the power of sale, concerning which, as apparently one of minor consequence, the pleadings present no question for decision. It follows from these conclusions that the school committee have full authority under the action of the special meeting to do the acts complained of, and that therefore the demurrer to the complaint in the second action should be sustained.

It remains to consider the appeal from the judgment for the plaintiffs in the first action. This judgment, by reason of our conclusions already expressed, based upon events which subsequently transpired, is deprived of its substantial importance. The appeal, however, requires that we give the case sufficient attention at least to enable us to discover whether or not there is error in it.

The judgment was rendered, as appears by the memorandum of decision, upon the theory that the appropriation made at the annual meeting, being the only vote upon the subject, was ineffective. The reason assigned for this conclusion was that the warning was insufficient. To this reason counsel add another, still more comprehensive, to the effect that as the board of finance made no estimate for the purpose in question, the town-meeting, whatever its warning, was by the statute rendered powerless to make an appropriation.

We are unable to concur in either of these views. The estimates recommended by the board are not required to be filed until October 1st. The selectmen are ordered to submit them to the adjourned annual town-meeting. This meeting is directed to be held on the second Monday in October at a specified time and place. The meeting is commanded to consider the estimates submitted, and the power to change them by a majority vote is given. The statute, it will thus be seen, is full of imperatives. Every step leading up to a consideration of the recommendations of the board of finance is commanded, and their consideration is

commanded.   Nothing is left to uncertainty, and the statute fixes the scope of, and limitations upon, the action which the meeting may take.   It is directed to consider and act upon the estimates recommended, and required to be submitted. Whatever, in the true construction of the Act, falls within the description is embraced within the jurisdiction of the meeting in this regard.   We are not called upon to inquire, as we have been invited to, whether this jurisdiction might not be exercised without further notice than the statute gives.   A notice was contained in the warning.   It was general in its terms, but we think sufficient to comprehend whatever is comprehended in the statutory language cited.   We are not now concerned with possible questions as to what in supposable cases this might include.   We are dealing with the matter of notice as it may be involved in the authority of the town-meeting to act within the limits of the directions and express warrant of the statute.   It is sufficient for this purpose to say that in view of the statute and its requirements of filed estimates, all the essentials of a notice entitling the adjourned meeting to act thereon as directed and to the extent permitted by the statute, if such notice was necessary, were fully satisfied in the warning in question.   No notice could in fact well be more public, enlightening or certain, where the action of the board is properly indicated in its return filed with the town clerk.   If further notice was demanded to justify the appropriation made, the question suggests itself as to how it could have been given or could in most cases be given, if the estimates are for convenience or design withheld until October 1st.   The annual meeting fell on October 5th.   It can never occur later than October 7th.   The law requires a five days' warning.   It follows that in the enactment of the statute the legislature has intended either that a notice of the kind given should, in connection with the provisions of the Act, be sufficient, or that warnings be issued in blind ignorance of what the situation might call for, or that such impossible conditions be imposed upon their issuance, that the power of popular control so long exercised, and in form expressly reserved,

should be largely restricted and dictation by an appointive board substituted.   It is impossible to believe that the legislature left such results as are involved in either of the last two alternatives to arise by indirection, or as the hidden consequences of its enactments, and failed to express its will in apt and certain language.

The warning having been sufficient to warrant action upon what by fair construction is embraced in a consideration and revision of the recommended estimates, the question which next suggests itself is whether the appropriation made was so embraced.   As an affirmative answer to this question is involved in our conclusions upon the allied but broader question as to whether or not the failure of the board of finance to make an estimate for the purpose deprived the town-meeting of the power to do so, we may for convenience's sake pass to the latter question.

The action of the board upon this matter had been invited in due course by the school committee.   The board took it under advisement, decided against the desired appropriation, and so reported in connection with the estimates recommended.   This report and accompanying estimates having been submitted to the meeting as the action of the board, and the meeting thus having before it the evidence that the course prescribed by statute had been complied with, assumed to override the decision of the board and make an appropriation.   It is difficult to discover wherein the spirit of the Act was not thus complied with.   But it is urged that its letter was not.   It is conceded that if the board had recommended some sum, however small, the meeting could, due warning being assumed, have acted at its pleasure.   The contention, however, is that since in the exercise of its judgment the board declined to recommend an appropriation the meeting could make none.   In other words, such a vital distinction is claimed to be made in the statute and to be observed in its application between a decision to recommend something and one to recommend nothing, although each is arrived at by the same process and the same exercise of judgment, that one endows the town-meeting with absolute power

Benham *v.* Potter—Downer *v.* Clarke.

while the other strips it of all power. If one meeting can be thus rendered incompetent all others may be, and if we extend the principle to special meetings, as it is sought to do, we should have the remarkable spectacle of the voters of a Connecticut town being deprived of all authority to direct in a matter of local expenditure at the caprice of a governmental board and by a resort to the simplest kind of an expedient. Clearly such a result was never contemplated. The argument for it is based upon a narrow and literal construction of language which entirely disregards the spirit and general scope of the Act. Nothing is plainer than that the board of finance was never intended to be the dominant power in respect to the finances of the town. Its work is required to be submitted to and considered by the voters in town-meeting assembled. The power of revision by majority action is carefully preserved. Its influence as a conservative and restraining force is recognized; its dominance is not, and any attempt to import it into the Act by construction is in violation of its evident spirit.

Much stress is laid in argument upon the term "estimates," so frequently used in the Act and especially in connection with the filing with the town clerk and the submission to the town-meeting, and the inference is drawn that where no expenditure is approved, there is no estimate and consequently no submission with respect to that subject-matter, and nothing before the meeting. The substantial thing contemplated in the Act is, however, the recommendations of the board, which may appear in figures or in the absence of figures. What is required to be filed with the town clerk are "the estimates," etc., "recommended." What the Act seeks to secure is the consideration and judgment of the board as evidenced by its recommendations, which may be either positive or negative in form. The one finds its expression in appropriations approved; the other in appropriations disapproved; the one in an estimate of something; the other in an estimate of nothing. Each is in strictness an estimate; each involves a recommendation.

It is said that the duty imposed upon the board, aside from the recommendation of a rate of taxation, is by the statute confined to the making of estimates, and that the report accompanying its table of estimates was therefore surplusage and furnished no basis for the town-meeting's consideration and revision. It is unnecessary to discuss questions which might be suggested as to the power of the meeting without such a report or other official evidence of the action of the board before it. The Act is suggestive of queries which it is not our purpose to answer. A report was made evidencing the action of the board. This report was at least an orderly and proper method of giving information to the voters of the town for their guidance. Having been made, filed and submitted, it advised the meeting that all possible conditions precedent to its right to act had been complied with, unless, indeed, the making of an estimate of some amount was such a condition, as we have said it was not. Whatever might be true of another situation, here, certainly, the requirements of the Act were satisfied, and the meeting was vested with full authority to consider and revise the conclusions and recommendations of the board and make the appropriation in question.

It follows that the judgment, which went to the extent of enjoining the several selectmen and school committeemen and each of them from in any manner obligating the town under and pursuant to said vote, was erroneous. In view of the subsequent action of the town, which has now become a part of the general controversy, other questions, which might otherwise be pertinent, do not call for decision.

There is error in the first action and the judgment therein is reversed. The Superior Court is advised to render judgment in the second action sustaining the demurrer therein. Costs in this court will in the latter action be taxed in favor of the defendants.

In this opinion the other judges concurred.