MICHAEL A. CONNOR *vs.* THOMAS J. SPELLACY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 10th—decided July 30th, 1936.

*Ernest L. Averill,* with whom was *William P. Averill,* for the appellant (plaintiff).

*Barclay Robinson,* for the appellee (defendant).

HINMAN, J.  The complaint set forth in substance that on November 7th, 1933, the legal voters of the town and city of Hartford, at a meeting duly called and held, voted to consolidate the then existing school districts within it into a consolidated school district, which consolidation became effective on July 1st, 1934; that on February 21st, 1936, the plaintiff and nineteen other legal voters and taxpayers presented to the mayor a petition requesting the calling of a meeting for the purpose of voting upon the re-establishment of the school districts; that on March 4th, 1936, the mayor notified the petitioners that, because special counsel to whom he had submitted the subject had advised him that a vote upon the question of re-establishing school districts in Hartford would not be legal at this time and that if such a vote were taken it would be of no legal effect, he would deny the petition, but that if such a vote were legal he would call the meeting if requested.  The plaintiff claimed a declaratory judgment to the effect that the legal voters of Hartford have the right to vote upon the question of re-establishing the school districts as they existed prior to July 1st, 1934, and that an affirmative vote upon the question will be legally effective to re-establish those districts.  To this complaint the defendants demurred upon grounds, in substance, that the defendants have no powers other than those conferred upon them by general or special law, that there is no

law authorizing a vote in Hartford on the question of re-establishing school districts or authorizing re-establishment of school districts therein, and that, therefore, no vote on the question can be had until a special or general act authorizing such a vote is passed by the General Assembly, and school districts cannot be re-established in Hartford until a special or general act is passed authorizing such re-establishment. The Superior Court reached the conclusion "that at the present time there is no statute which grants to towns the right to re-establish school districts, nor is there any special law which grants to the town of Hartford such right" and that, therefore, "an affirmative vote upon the question of re-establishment would not be legally effective to re-establish school districts in Hartford," and sustained the demurrer. This appeal is from the sustaining of the demurrer and the judgment for the defendants rendered in consequence.

Before as well as after the adoption of the State Constitution the duty of providing for the education of children was performed principally through the instrumentality first of the school society and later of the school district. *State ex rel. Walsh* v. *Hine*, 59 Conn. 50, 60, 21 Atl. 1024. "In 1766, each town and society were empowered to divide themselves into districts, and to alter the same." Footnote to Title 84, Chapter 1, General Statutes, 1821. That Chapter (§§ 3, 4 and 5) provided for the formation and alteration of districts and annexation of districts to those adjoining. By Chapter 41 of the Public Acts of 1856 the duties and powers of school societies were transferred to towns, and it was provided (I, § 2) that the districts thus established should become and remain school districts of the town, and (III, § 1) that "each town shall have power to form, alter and dissolve school districts within its limits" subject to certain limita-

tions. This provision, in substance, appeared as § 67 of Title 16, General Statutes, 1866. In the Revision of 1875, the power of the town was specified (Chap. V, § 1, p. 134) as "to form, unite, alter, and dissolve school districts and parts of school districts within its limits," and this phraseology was retained through the several Revisions to and in § 978 of the General Statutes of 1930. In the Revision of 1875 this statute and numerous others pertaining to district management of schools were grouped as Chapter V, entitled "School Districts," of Title 11, and they, with amendments and additions thereto, have been similarly grouped and entitled in subsequent Revisions. General Statutes, 1888, Chap. 135; General Statutes, 1902, Chap. 135; General Statutes, 1918, Chap. 50; General Statutes, 1930, Chap. 53. Included in this classification are not only § 978 of 1930 but also §§ 980, 981, 982 and 983 of the General Statutes hereinafter referred to.

In 1865 an act was passed providing, in § 1, that "a town may at any time consolidate all the school districts therein in one district, to be known as the school district of [name of town]." Public Acts, 1865, Chap. 112; General Statutes, 1866, Chap. 3(3), § 61, p. 337; *Arsenal School District* v. *Hartford,* 120 Conn. 348, 356, 180 Atl. 511. By subsequent amendments this was so changed that in the 1875 Revision of the General Statutes (Title 11, Chap. VI, § 1) it read: "Any town may abolish all the school districts, and parts of school districts, within its limits; and assume and maintain control of the public schools therein, subject to such requirements and restrictions as are or may be imposed by the General Assembly; and for this purpose, every such town shall constitute one school district, having all the powers and duties of a school district, with the exceptions hereinafter stated." This provision still remains, substantially unchanged, as

§ 957 of the General Statutes of 1930. In the Revision of 1875 this section was followed by others (constituting Chapter VI of Title 11) making various provisions appropriate to such consolidation and its consequences as to management of schools and school properties and including one (§ 10) which had originated in Chapter 87 of the Public Acts of 1867, § 8, that "Any town which has or shall have assumed the control of its public schools, as provided in the first section, may, at its second annual meeting thereafter, but not previously, or at any subsequent annual meeting, abandon such control and re-establish the several school districts therein, as they were before said action; . . ." General Statutes (1888) § 2208. By Chapter 202 of the Public Acts of 1889 this was so amended that re-establishment might not be voted earlier than the "fifth" instead of the "second" annual meeting after assumption of control by the town. Thereafter this provision continued unchanged in substance until 1931. General Statutes, 1902, § 2214; General Statutes, 1918, § 957.

A provision was made, by Chapter 32, § 2, of the Public Acts of 1875, that whenever a vote shall be taken in any town in reference to abolishing school districts and assuming control of public schools therein such vote shall be by ballot at an annual town meeting upon the notice and in the manner prescribed by that section. This became § 2194 of the General Statutes of 1888, § 2213 of the General Statutes of 1902. In 1903, by Chapter 205 of the Public Acts, § 2213 was amended by extending its provisions also to a vote "taken to re-establish school districts under Section 2230." As so amended it became § 956 of the General Statutes of 1918, and in the Revision of 1930 was combined with § 957 (last above referred to) as § 958 of the General Statutes of 1930. Similarly to the statutes

pertaining to school districts, these and other relevant statutes consistently have been grouped separately under the title "Consolidation of School Districts." General Statutes, 1875, Title 11, Chap. VI; General Statutes, 1888, Chap. 136; General Statutes, 1902, Chap. 136; General Statutes, 1918, Chap. 51; General Statutes, 1930, Chap. 51.

It thus appears that from an early date there gradually developed a body of statute law pertaining to and applicable in towns in which there continued to be maintained the original district system of control of schools, and another body of laws, always recognized as essentially separate and distinct, pertaining to and growing out of the abolition of those districts, under the act of 1865 and its successors, and the consequent consolidation of all those districts into one, consisting of the entire town.

As we have seen, the statutes relating to "consolidation of school districts" gave any town power to abolish the school districts therein, by vote as provided and, by vote, after the specified period (five years since 1889) to re-establish them. In 1909, however, an act was passed (Public Acts, Chap. 146) the effect of which was to compel every town which had not already voted consolidation, except one having a city or borough or district, organized under special acts of the Legislature, within its limits, to "assume and maintain the control of all the public schools within its limits" from and after July 15th, 1909 (§ 1) and which provided (§ 9) that no power of school districts or any officers thereof should be thereafter exercised, except for the purpose of closing and settling up the affairs of the district. The act was mandatory and contained no provision for subsequent re-establishment of districts in any town within its purview. "For many years towns have been permitted to consolidate all

the districts within their limits, and such a consolidation has now been made compulsory." *State ex rel. Huntington* v. *Huntington School Committee* (Dec., 1909) 82 Conn. 563, 566, 74 Atl. 882; *Keegan* v. *Thompson,* 103 Conn. 418, 422, 130 Atl. 707.

Hartford was one of the towns, which in 1931 numbered seven (General Statutes, Cum. Sup. 1931, § 175a), excepted from the operation of this act and so had a continuing right, not less than five years after voting to abolish the school districts in the town and assume control of the schools therein, to vote upon the question of abandoning such control and re-establishing the districts, under §§ 957 and 958 of the General Statutes, 1930, unless that right was affected by the Special Act of 1929 hereinafter referred to. Its present power so to do depends upon the effect of amendments of the statutes made by the General Assembly in 1931, and of the Special Act of 1929. The provisions of the Special Act (20 Special Laws, 1929, p. 859) under which we have held (*Arsenal School District* v. *Hartford,* supra, p. 355) consolidation of districts in Hartford was accomplished, are such that it can be claimed with some reason, and might be held, that subsequent re-establishment of districts is foreclosed as it clearly was by the act of 1909 as to those towns which were not expressly exempted from its operation. Section 2 of the Special Act, which provides that "no powers of school districts or any officer thereof, . . . except such as are reserved or given by this act, shall be exercised" after the taking effect of consolidation "but every school district within the city of Hartford then existing may preserve its organization and necessary powers for the purpose of closing and settling up its affairs," follows closely the language of § 9 of the Public Act of 1909 and, provision for re-establishment being also lacking, might be construed

to equally import finality. However, we proceed to consider whether, assuming that the provisions concerning re-establishment contained in Chapter 51 of the General Statutes of 1930 remained applicable to consolidation in Hartford, the power and right to re-establish school districts are available to it after the amendments of 1931.

It is clear that the statute which conferred the right to re-establish districts was § 8 of Chapter 87 of the Public Acts of 1867 which we have already quoted, and which eventually became § 957 of the General Statutes of 1918. The provision, first made in 1903 (Public Acts, Chap. 205) and which was included in § 956 of the General Statutes of 1918, whereby the specifications as to the manner of voting theretofore applicable only to votes upon consolidation of districts were made applicable to a vote upon re-establishment, were auxiliary to that enabling statute and procedural merely. The fact that in the Revision of 1930 the two sections were combined in one section (§ 958) does not affect their relative importance and significance.

Chapter 249 of the Public Acts of 1931, an act making extensive revision of the statutes relating to education, included (§ 32) a substitute for § 958 of the General Statutes of 1930 which entirely omitted the provision which we regard as the enabling statute, that "any town assuming control of its public schools . . . may at any annual meeting . . . thereafter, vote to abandon such control and re-establish the several districts as they were before such action." It retained the other provision, passed in 1889 (Public Acts, Chap. 219, § 1), which was combined with it in § 2214 of the General Statutes of 1902 (§ 957 of 1918), that "A vote to consolidate the school districts in any town . . . shall take effect on the first Monday of July next succeeding such vote" but added (§ 33) "unless otherwise directed

by the town." Aside from this the substitute provided that when voting machines are used in any town they may be used (instead of the vote by ballot which had previously been prescribed and the manner thereof specified) "whenever a vote shall be taken in any town in reference to abolishing school districts and assuming control of the public schools therein, or to re-establish said districts," with a further provision that "when voting machines are not used, the vote upon consolidating school districts shall be taken according to the provisions of Chapter 38 of the General Statutes." Probability that the inclusion of a vote "to re-establish said districts" in the statement of purposes for which voting machines may be used was an inadvertent survival from a similar statement in § 956 is strengthened by the omission of mention of vote on re-establishment from the provision, last above quoted, for voting in towns where machines are not used. Be that as it may, an intention to withdraw and terminate the power to re-establish districts after consolidation is so plainly evinced by the omission of the vital enabling provision that it is not to be overridden or defeated by a provision which is merely subsidiary and procedural. The like is true as to the retention, by failure to repeal —whether accidental or in contemplation of cases of re-establishment already voted but not completed or where re-establishment might hereafter be specially authorized—§ 968 of the General Statutes, providing that when any town shall have voted to re-establish its school districts the town shall be reimbursed by each district for improvements which the town has made on the school house, its furniture and appurtenances. Further indication of an intent to terminate the right to re-establish is afforded by the express repeal, in § 106 of Chapter 249 of the Public Acts of 1931, of § 969 of the General Statutes which provided

that upon abandonment of consolidation the persons elected school committee of the consolidated districts shall become and be the members of the board of school visitors of the town.

In determining the legislative intent we must regard the history of the law and the policy underlying it. *Chambers* v. *Lowe,* 117 Conn. 624, 626, 169 Atl. 912. We have carefully considered the legislative history of the act of 1931, but finding nothing persuasive of an intent—which the appellant claims is manifested—not only to retain and continue the power to re-establish districts but also to abrogate the safeguard, imposed since 1867, of a period (at first two years and since 1889 five years) of trial after consolidation before re-establishment could be voted upon. As counsel for the appellant correctly concedes in his brief, "The policy of the State has for many years favored the consolidation of school districts. Legislation in its behalf has included fewer handicaps to its accomplishment than has been the case of the maintenance or re-establishment of school districts." The act of 1931, if construed as he contends it should be, would contravene the consistent policy of substitution of town for district system and the trend of legislative action reflecting and effectuating it manifested by the course of legislation in which the act of 1931, as we construe it in the respect here involved, constitutes a logical forward step.

No assistance is afforded the appellant's claim, that a right to re-establish districts survives the 1931 amendments, by the retention of § 978 of the General Statutes giving a town power to "form, unite, alter and dissolve school districts and parts of school districts within its limits" (except that the power to form a new district is withdrawn by § 303c, General Statutes, Cum. Sup. 1935), § 980 concerning notice of proposal to alter districts, § 981 appeals, § 982 disposition of

property on alteration of district, and § 983 distribution of property and debts of districts divided. These and all of the other sections in Chapter 53 of the General Statutes of 1930 pertain, as appears from the analysis we have made, exclusively to school districts in towns in which consolidation of all the districts has not been effected under Chapter 51 and its predecessors. These two Chapters "relate to essentially different subjects." *Young* v. *Bethany,* 73 Conn. 166, 169, 46 Atl. 822. In each of the Revisions, the statutes of each class have been carefully grouped into a separate Chapter. The provisions of each are applicable or available only as to towns of the class to which they pertain. *Benham* v. *Potter,* 77 Conn. 186, 193, 58 Atl. 735. In *First School District* v. *Ufford* (1884) 52 Conn. 44, and *First School District* v. *Eighth School District,* 78 Conn. 71, 61 Atl. 234, where action was taken under statutes now in Chapter 53, it appears, inferentially in the former (from both opinion and record) and definitely in the latter, that only part of the districts in the town were united and "consolidation" as mentioned therein referred to such union instead of to consolidation of all districts and abandonment of the district system.

The trial court was right in concluding that at the present time there is no law which grants to Hartford, or any other town, the right to re-establish school districts therein, and that therefore an affirmative vote upon the question of re-establishment would not be legally effective to re-establish such districts therein.

There is no error.

In this opinion the other judges concurred.