WILLIAM T. CARROLL, TREASURER *v.* SOCONY-VACUUM OIL COMPANY, INC.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and INGLIS, Js.

50

Argued March 8—decided August 23, 1949.

*Frank W. Flood,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the plaintiff.

*Thomas J. Spellacy* and *Samuel H. Aron,* with whom, on the brief, was *John J. Kenny,* for the defendant.

*Maxwell M. Merritt* and *J. Kenneth Bradley* argued the case as amici curiae.

The following attorneys appeared on briefs as amici curiae: *W. Arthur Countryman, Jr., Joseph F. Berry, William L. Beers, Frederick L. Comley.*

MALTBIE, C. J. The issue presented by this reservation concerns the constitutionality of an act of the General Assembly authorizing gasoline distributors in the state to retain certain moneys withheld by them under the terms of a statute which had in fact been repealed. The case is the outgrowth of our decision in *Anastasio* v. *Gulf Oil Corporation,* 131 Conn. 708, 42 A. 2d 149.

Before undertaking a discussion of the issues argued before us, we must point out the scope of the decision which we may render. The action was brought by the state to recover the moneys withheld. The writ was dated March 14, 1946. On November 27, 1946, the defendant answered denying liability. The General Assembly at its 1947 session passed the act upon which the defendant relies and which it claims released it from liability. General Statutes, Sup. 1947, § 400i.

Thereafter it amended its answer to include a special defense setting up that claim. The plaintiff demurred to it on the ground that the act was unconstitutional because it gave money belonging to the state to the distributors who by its terms were permitted to retain the sums withheld and granted to them exclusive pub-· lic emoluments or privileges, and because it was unlawfully discriminatory. With the pleadings in this situation the case was reserved to us. The basis of the reservation was not that the advice we might give would settle the issues in the case, but that it was reasonably certain to enter into the final decision. Under our present rules of practice this is a proper basis for a reservation. Practice Book § 421. *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 218, 21 A. 2d 383. The statute authorizing such a proceeding provides: "The court or judge making such a reservation shall, in the judgment, decree or decision made or rendered in such cases, conform to the advice of the supreme court of errors." General Statutes § 7967. That provision necessarily implies a limitation upon the extent to which we may go in giving advice; it must be such that the court or judge from whom the reservation comes can properly apply it in deciding the issues before it when the reservation was made.

As this case was pending on demurrer when it was reserved, the ultimate issue before us is: Should the demurrer be sustained or overruled? *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 376, 23 A. 186; *Benham* v. *Potter,* 77 Conn. 186, 200, 58 A. 735. Ordinarily we should not consider any issues beyond those which the court could decide in ruling upon that demurrer and that would mean issues presented by the allegations of the pleading demurred to. *Santoro* v. *Kleinberger,* 115 Conn. 631, 633, 163 A. 107. To that

principle an exception may be made as regards facts not alleged if they are clearly undisputed, and our advice may be given contingent upon an amendment to the pleadings which will properly allege them. *Camp* v. *Scott,* 47 Conn. 366, 379; *Schlesinger* v. *Chapman,* 52 Conn. 271, 274. We understand that the parties are in no dispute as to the general background of facts stated in our decision in *Anastasio* v. *Gulf Oil Corporation,* supra; in fact, the case has been presented to us upon that basis; and those facts we will consider, leaving it to the trial court to require any amendment necessary to present them before it decides the demurrer. Certain other facts material to one aspect of the issues before us we cannot regard as undisputed; and, as we shall point out later, we cannot for that reason decide fully the issues argued before us.

Under statutes cited in our opinion in the *Anastasio* case, a tax was required to be paid by distributors of gasoline which was sold or used for propelling automobiles over the highways; while the tax was to be paid by them, it was in fact one imposed upon those who used the gasoline for that purpose; and the distributors were in effect agents of the state in collecting it. In 1933 two acts were passed with reference to the tax; one amended the previous statute which imposed the tax; Public Acts, 1933, c. 303, § 5; and the other provided: "Each distributor may retain one per cent of the tax on gasoline . . . to cover the expense of collection of said tax and loss by reason of shrinkage." Public Acts, 1933, c. 267. The statute revision commissioner, in preparing the Supplement to the General Statutes for 1933, combined the two acts into a single section. General Statutes, Sup. 1933, § 466b. In 1935, that section was amended and the provision allowing distributors to retain the 1 per cent was omitted. Public Acts, 1935, c. 228, § 15. Nevertheless, the omit-

ted provision was printed in the 1935 Cumulative Supplement to the General Statutes as a separate section. General Statutes, Cum. Sup. 1935, § 655c.

The distributors were required to report each month to the state treasurer upon forms prepared by the motor vehicle commissioner. The first part of each report consisted of a statement of all gasoline sold, used or transferred by the distributors. The second part stated the amount of gasoline on hand at the beginning of the month, the amount received during the month, and the amount on hand at its end; in this way the amount to be accounted for was determined; the number of gallons which had been covered by the first part of the report was then deducted; and this left a balance, which was entered merely as "Difference." The third part of the report was a summary of items taken from the first part as the basis upon which the tax was to be computed, with a deduction of 1 per cent as "distributors allowance." Each month the commissioner of motor vehicles certified to the state treasurer the amount of tax due from the distributors in accordance with the summary in the third part of the reports, and the distributors, upon demand of the treasurer, paid the amount so certified. In determining the amount of taxes certified to be due, no account was taken of the gasoline appearing in the report under the item "Difference." The *Anastasio* case was brought to recover an additional amount of taxes claimed to be due the state on account of this item. The action was one of a large number of similar suits brought against different distributors. It had been assumed by all parties that § 655c was in effect as a valid statute of the state, and in the trial of the *Anastasio* action, and in its presentation to us, much of the argument was based on the proper construction to be given to that section. When we discovered that the statutory provision em-

bodied in that section had been repealed in 1935, we found it impossible to decide the case as presented and remanded it for further proceedings according to law. Our decision was rendered on April 3, 1945.

The present action was brought upon a different basis. The plaintiff is now seeking to recover the 1 per cent which was deducted in determining the amount of taxes due as stated in the third part of the report. It is stipulated that this action is one of a number of similar actions brought by the plaintiff, that the plaintiff claims that there is due from the defendant the sum of $186,152.71, and, from the 153 distributors from whom he is claiming a recovery, an aggregate principal sum of almost $900,000, with interest amounting to more than $450,000, and that after our decision in the *Anastasio* case 31 distributors paid the state on like claims made by the plaintiff an aggregate principal sum of $7408.86, with interest amounting to $2647.93.

The 1947 act provides as follows: "Section 1. Distributors, as defined in chapter 84 of the general statutes, who have, by virtue of the sentence printed as section 655c of the 1935 supplement to the general statutes, retained one per cent of the tax on gasoline are hereby authorized to retain said one per cent of the tax on all gasoline sold on or before April 3, 1945. Sec. 2. The sentence printed as § 655c is expunged from said supplement. Sec. 3. This act shall take effect from its passage." Public Acts, 1947, No. 499 (General Statutes, Sup. 1947, § 400i; Rev. 1949, § 2558). It became effective by the signature of the governor on July 8, 1947.

In the first place, it is necessary to determine the scope of the 1947 act. Section 655c of the 1935 Cumulative Supplement stated that the deduction was "to cover the expense of collection . . . and loss by reason

of shrinkage." In *Anastasio* v. *Gulf Oil Corporation*, 131 Conn. 708, 718, 42 A. 2d 149, we pointed out that, as the tax was one imposed upon gasoline sold or used, an allowance for shrinkage while in the possession of the distributor introduced an "alien element" into the law; and we further said (p. 719) that its inclusion in the provision for a deduction was explainable only upon the basis of a misapprehension by the General Assembly as to the scope of the statute and that the repeal of the provision permitting distributors to make the deduction might well have been due to a realization of that fact. That is far from saying that, if in considering the amount of allowable deduction the General Assembly mistakenly took account of an element not in accord with the basis of the tax, we could hold that the provision went beyond its powers; and we are not now concerned with the question whether or not it does. The bill (Sen. Bill No. 518) which finally resulted in the passage of the 1947 act provided that distributors who had "retained one per cent of the tax on gasoline pursuant to reports required by the commissioner of motor vehicles, shall not be required to pay said one per cent to the state." The act as passed authorized distributors to retain "said one per cent . . . on all gasoline sold on or before April 3, 1945." Sup. 1947, § 400i. The General Assembly by the terms of the act, particularly when it is compared with those of the bill from which it resulted, evinced an intent to remove shrinkage as the basis of a deduction. The legislature thus eliminated any question of shrinkage and left as the basis of the deduction the other element mentioned in § 655c, the expense of collecting the tax. Our first question is: Could the legislature, within the limitations imposed upon it by the constitution, make such a provision?

The General Assembly, within the broad powers

granted to it by the constitution, may recognize obligations resting on equitable considerations and good conscience even where the state is not legally bound. *Norwich Gas & Electric Co.* v. *Norwich,* 76 Conn. 565, 572, 57 A. 746; *Lyman* v. *Adorno,* 133 Conn. 511, 528, 52 A. 2d 702; see *Sanger* v. *Bridgeport,* 124 Conn. 183, 189, 198 A. 746. Illustrative of the application of that principle is *State ex rel. Adams* v. *Crawford,* 99 Conn. 378, 121 A. 800. In that case the situation was this: The War-time Prohibition Act of Congress, signed by the president on November 21, 1918, became effective on July 1, 1919. The plaintiff, on December 1, 1918, received from the county commissioners a license to sell intoxicating liquor in Fairfield County during the ensuing year and paid $750 therefor; the General Assembly at its session in 1919 passed an act providing that those holding licenses should be reimbursed such an amount of the fees paid by them as was proportionate to the period covered by the licenses during which the act prevented them from selling liquor. The county commissioners refused to reimburse the plaintiff and he brought an action of mandamus to compel them to do so. We sustained a judgment for the plaintiff. One of the defenses pleaded was that the statute attempted to divert public funds to a private purpose. We said (p. 385): "Equitable considerations are not conclusive upon sovereign States, but the fundamental principles of the law, including constitutional law, follow substantially the course of fair dealing. . . . Because the licensees had no remedy at the common law, it does not follow that the General Assembly might not recognize its moral obligation as the keeper of the State's conscience, and give them a remedy." If the General Assembly could reasonably conclude that the distributors who had not paid the moneys now claimed by the state were as a matter of equity and

fair dealing entitled to retain them, we cannot hold that it transcended its powers in passing the act before us.

The distributors, in collecting the tax, were acting as agents of the state; *Ciarleglio* v. *Benedict & Co.*, 127 Conn. 291, 293, 16 A. 2d 593; and a provision that they should be entitled to retain a reasonable sum for the services they performed for the state would certainly be proper. *Opinion of the Justices*, 88 N. H. 500, 503, 190 A. 801; *Great A. & P. Tea Co.* v. *McCanless*, 178 Tenn. 354, 359, 157 S. W. 2d 843. If services are performed for the state, without previous provision for compensation but under circumstances making it fair and equitable to grant compensation retrospectively, the legislature may make provision for it. In the instant case, the inclusion in the 1935 Supplement of the repealed provision that distributors might retain 1 per cent of the amounts collected was the act of a state official, the statute revision commissioner; during the period in question the distributors made their returns upon blanks furnished by the motor vehicle commissioner, and these blanks, in the summary on the basis of which the amount of money due from the distributors was computed, contained an item, "Deduct distributors allowance of 1%"; it was the amount left after deducting this sum and other permissible allowances which was the basis of the certificate stating the amount due from the distributors which was issued by the motor vehicle commissioner to the state treasurer; and it was upon the basis of this certificate that the latter's demand was made upon the distributors. In *Ciarleglio* v. *Benedict & Co.*, supra, decided by us in 1940, we regarded the provision for the deduction as being in effect, as did the Superior Court in *Talbot* v. *Fair-Chester Oil Co.*, 8 Conn. Sup. 340, 346, decided the same year. The state officers concerned, during

the period between 1935 and our decision in *Anastasio v. Gulf Oil Corporation,* supra, rendered in 1945, assumed that there was statutory authority for the distributors to retain 1 per cent of the amounts collected by them, and nothing in the record indicates that the distributors were not proceeding on a like assumption. We cannot hold that under these circumstances the General Assembly might not properly consider that it was not fair to the distributors, after everyone had assumed, for some ten years, their statutory right to retain the 1 per cent, to require them to pay the moneys to the state, with the addition of 9 per cent a year as a penalty provided by the statutes for withholding the payments. General Statutes § 2554.

The plaintiff's contention that the General Assembly improperly gave money belonging to the state to the distributors and granted them exclusive public emoluments or privileges is not sound. In so far as the demurrer raised that issue, it should be overruled.

The plaintiff contends also that the act in question is unconstitutional because it grants to those distributors who at the time it became effective had not paid the money in question the right to retain it, while the distributors who had paid were given no right to have the money refunded to them, and therefore it constituted an unlawful discrimination. The defendant counters with the contention that the plaintiff is in no position to make that claim, under the rule stated in many decisions that, at least in the absence of special circumstances, only one who is discriminated against is in a position to attack a statute on the ground of an illegal classification. *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 246, 111 A. 363; 11 Am. Jur. 759. It is a thoroughly established principle that one who can suffer no injury by the operation of a statute will not be heard to claim that

it is unconstitutional. *State* v. *Sinchuck,* 96 Conn. 605, 615, 115 A. 33; *Rindge* v. *Holbrook,* 111 Conn. 72, 76, 149 A. 231. Most, if not all, of the cases cited in support of the rule on which the defendant relies will be found to be but applications of this principle to a claim of unlawful discrimination. See *Supervisors* v. *Stanley,* 105 U. S. 305, 311, 26 L. Ed. 1044, 1120; *Aluminum Co. of America* v. *Ramsey,* 222 U. S. 251, 256, 32 S. Ct. 76, 56 L. Ed. 185; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 576, 35 S. Ct. 167, 59 L. Ed. 364; *Premier-Pabst Sales Co.* v. *Grosscup,* 298 U. S. 226, 227, 56 S. Ct. 754, 80 L. Ed. 1155. This is true also of our statement in *Connecticut Light & Power Co.* v. *Southbury,* supra. Professor Willoughby treats the rule as an application to the claim of unlawful discrimination of the general principle that only one who is injured can attack a law as unconstitutional. 1 Willoughby, Constitutional Law (2d Ed.) p. 19, § 13. This accords with the language used in the opinions in *Hatch* v. *Reardon,* 204 U. S. 152, 160, 27 S. Ct. 188, 51 L. Ed. 415; *Collins* v. *Texas,* 223 U. S. 288, 295, 32 S. Ct. 286, 56 L. Ed. 439; *Murphy* v. *California,* 225 U. S. 623, 630, 32 S. Ct. 697, 56 L. Ed. 1229; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 544, 34 S. Ct. 359, 58 L. Ed. 713. Moreover, in other cases where the rule has been applied, the court has cited in support of it *Hooker* v. *Burr,* 194 U. S. 415, 419, 24 S. Ct. 706, 48 L. Ed. 1046, and other decisions illustrating the general principle. *Southern Railway Co.* v. *King,* 217 U. S. 524, 534, 30 S. Ct. 594, 54 L. Ed. 868; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, 550, 32 S. Ct. 784, 56 L. Ed. 1197; *Rosenthal* v. *New York,* 226 U. S. 260, 271, 33 S. Ct. 27, 57 L. Ed. 212.

That one not a member of a class who suffers a direct injury by reason of a statute which is unconstitutional because of an illegal discrimination may attack it on

that ground was held in *Buchanan* v. *Warley,* 245 U. S. 60, 72, 38 S. Ct. 16, 62 L. Ed. 149. In that case, an owner of land, having made a contract to sell it to a colored person, had been denied specific performance because of a city ordinance forbidding colored persons to occupy houses in blocks where the greater number of houses were occupied by white persons; and the court held that it was erroneous to deny relief to the plaintiff because of the ordinance, since it sought to establish an unconstitutional discrimination. See *Quong Ham Wah Co.* v. *Industrial Accident Commission,* 184 Cal. 26, 192 P. 1021. The state, which the plaintiff in the present case represents, will lose a very large sum of money if effect is given to the statute in question; and we cannot hold that the rule upon which the defendant relies denies to the state the right to attack the law as unconstitutional on the ground that it would bring about an illegal discrimination.

If, however, we are wrong in that conclusion as regards the provisions of the fourteenth amendment to the constitution of the United States, it does not follow that the same rule applies to our constitution. There is another basis for the rule claimed by the defendant as applied to that amendment: Its provision forbidding any state to "deny to any person . . . the equal protection of the laws" is a guarantee of personal rights to the individual against unlawful discrimination. *Shelley* v. *Kraemer,* 334 U. S. 1, 22, 68 S. Ct. 836, 92 L. Ed. 1161. The only provision in our constitution which forbids discrimination is § 1 of article first: "That all men when they form a social compact, are equal in rights; and that no man, or set of men are entitled to exclusive public emoluments or privileges from the community." We have said that this provision has substantially the same meaning as the provision in the fourteenth amendment we have been

discussing; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 195, 132 A. 561; *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 219, 21 A. 2d 383; *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A. 2d 702; *Franco* v. *New Haven,* 133 Conn. 544, 548, 52 A. 2d 866; and as regards the right of the General Assembly to make classifications, that is no doubt true. It does not follow, however, that any restriction upon the right of persons to avail themselves of a claim of unlawful discrimination which may be based on the wording of the fourteenth amendment applies to the broader terms of our constitution. If the statute grants to the defendant an immunity which, by reason of its denial of a like right to others similarly situated, violates our constitution, there is no reason why the state, which will suffer a direct and very substantial injury if the law is upheld, may not attack it.

It is also contended that as a fact the General Assembly when it passed the statute in question did not know of the payments which had been made by certain distributors and consequently did not intend to create a discrimination. Aside from the failure of the record to support the fact claimed, it is a sufficient answer to quote from *Near* v. *Minnesota,* 283 U. S. 697, 708, 51 S. Ct. 625, 75 L. Ed. 1357: "With respect to these contentions it is enough to say that in passing upon constitutional questions the court has regard to substance and not to mere matters of form, and that, in accordance with familiar principles, the statute must be tested by its operation and effect." *Gregg Dyeing Co.* v. *Query,* 286 U. S. 472, 476, 52 S. Ct. 631, 76 L. Ed. 1232; *Shaffer* v. *Carter,* 252 U. S. 37, 55, 40 S. Ct. 221, 64 L. Ed. 445. The motive of the legislature is immaterial; *Lochner* v. *New York,* 198 U. S. 45, 64, 25 S. Ct. 539, 49 L. Ed. 937; *Daniel* v. *Family Security Life Ins. Co.,* 336 U. S. 220, 69 S. Ct. 550, 93 L. Ed. 483;

and, if the General Assembly acted inadvertently, that fact would not give any additional validity to the law. *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 416, 40 S. Ct. 560, 64 L. Ed. 989.

It is not possible to construe the act as giving to the distributors who have paid a right to a refund of the moneys. Unless it is because of circumstances we shall hereinafter discuss, the statute creates an improper discrimination in that it relieves from liability the distributors who have not paid and at the same time makes no provision for refunding the sums to those who have paid; and such a discrimination would violate the constitutional provisions we have discussed. See *Montgomery* v. *Branford,* 109 Conn. 388, 391, 147 A. 9; *In re Blois,* 179 Cal. 291, 176 P. 449; *Pacific Indemnity Co.* v. *Myers,* 211 Cal. 635, 643, 296 P. 1084; *Fountain Park Co.* v. *Hensler,* 199 Ind. 95, 104, 155 N. E. 465; *Life & Casualty Ins. Co.* v. *McCormack,* 174 Tenn. 327, 332, 125 S. W. 2d 151. In *Mayflower Farms* v. *Ten Eyck,* 297 U. S. 266, 56 S. Ct. 457, 80 L. Ed. 675, the Supreme Court held unconstitutional a statute which gave to certain milk dealers privileges denied to others, and its words are peculiarly apt to the situation before us (p. 273): "We are referred to a host of decisions to the effect that a regulatory law may be prospective in operation and may except from its sweep those presently engaged in the calling or activity to which it is directed. Examples are statutes licensing physicians and dentists, which apply only to those entering the profession subsequent to the passage of the act and exempt those then in practice, or zoning laws which exempt existing buildings, or laws forbidding slaughter houses within certain areas, but excepting existing establishments. The challenged provision is unlike such laws, since, on its face, it is not a regulation of a business or an activity in the interest of, or

for the protection of, the public, but an attempt to give an economic advantage to those engaged in a given business at an arbitrary date as against all those who enter the industry after that date. The appellees do not intimate that the classification bears any relation to the public health or welfare generally; that the provision will discourage monopoly; or that it was aimed at any abuse, cognizable by law, in the milk business. In the absence of any such showing, we have no right to conjure up possible situations which might justify the discrimination. The classification is arbitrary and unreasonable and denies the appellant the equal protection of the law."

It is not controlling that the aggregate amount which has been paid by distributors is only some $7500, whereas the principal and interest claimed to be due from those who have not paid amount to more than $1,000,000. It is true that one distributor paid only $1.50 and eight others less than $25 each. If only such small sums were involved, the discrimination would be too trivial to justify holding the statute unconstitutional. But one distributor paid by way of principal and interest $3259.92, another $2025.57, and a third $1588.18. These sums are not in themselves trivial, and it may well be that the payments constituted as heavy a burden upon those who made them, in comparison to their resources, as would the larger sums upon the distributors who have not paid.

We cannot uphold the act on the uncertain ground that the General Assembly will at some future time provide for reimbursement of the distributors who have paid. It is, however, contended in behalf of the distributors who claim under the act that those who paid did so voluntarily and of their own choice created as to themselves a changed situation. If it could be reasonably concluded that their conduct at the time or

before the act was passed had been such as to render its operation not unjust as to them, because of a waiver or abandonment of their rights or other like cause, there would be no improper discrimination. See *St. Louis & Kansas City Land Co.* v. *Kansas City,* 241 U. S. 419, 428, 36 S. Ct. 647, 60 L. Ed. 1072.

The pleadings do not allege the circumstances under which any of the distributors paid the money withheld, or the dates when the payments were made. The distributors who claim under the act rely largely upon the principle that one who asserts that a statute is illegally discriminatory "must assume the burden of showing that it does not rest upon any reasonable basis, and we must assume the existence of any state of facts which can reasonably be conceived of as existing at the time of the enactment of the law." *State* v. *Cullum,* 110 Conn. 291, 296, 147 A. 804; see *Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194, 209, 55 S. Ct. 187, 79 L. Ed. 281. The presumption of the validity of a statute because of some reasonably conceivable factual situation which the legislature might have had in mind is rebuttable. *Borden's Farm Products Co.* v. *Baldwin,* supra; *United States* v. *Carolene Products Co.,* 304 U. S. 144, 153, 58 S. Ct. 778, 82 L. Ed. 1234. With nothing in the pleadings as to the circumstances under which certain of the distributors paid, we are not justified in holding the act in question constitutional upon the presumption on which the distributors claiming under it rely; on the other hand, they should not be precluded from establishing at the trial of the case that the circumstances of the payments were such that no injustice would be done by the operation of the act.

The complaint merely sought a recovery of the withheld payments; the answer merely set up as a defense a claim that the defendant was not liable by reason of

the 1947 act. There is nothing on the surface of that act which would show it to be improperly discriminatory. In the absence of further allegations, the demurrer should be overruled in so far as it is based upon a claim that the act was invalid on such a ground. If the plaintiff claims that there are facts which bring about such a result, they should be alleged and the issues closed for determination in the trial court.

Our conclusion is that the first ground of demurrer should be overruled because it is not sound in law and that the second ground should be overruled because the act is not on its face illegally discriminatory and no facts are alleged in the pleadings on which a claim could be based that in operation it will bring about such a discrimination.

We cannot give specific answers to the questions propounded in the reservation. We advise the Superior Court that, for the reasons stated, the demurrer to the special defense should be overruled on both grounds.

No costs will be taxed in this court to either party.

In this opinion BROWN, ELLS, and INGLIS, Js., concurred; JENNINGS, J., concurred in the result.