PEOPLE, *for use of* OSTAPOW, *v.* FIDELITY & CASUALTY CO.

PRINCIPAL AND SURETY—STATUTORY BONDS—STATUTES—ONE EN-
JOYING ITS BENEFITS MAY NOT QUESTION VALIDITY OF STATUTE.
In an action upon a statutory bond, given in pursuance of
Act No. 271, Pub. Acts 1915, as amended by Act No. 399,
Pub. Acts 1919, where both the surety and its principal
have enjoyed the benefits of the act, neither may question
its validity for the purpose of evading liability for breach
of the bond by the principal.

Error to Wayne; Des Voignes (L. Burget), J., pre-
siding.    Submitted January 25, 1923.    (Docket No.
112.)    Decided March 22, 1923.

Assumpsit by the people of the State of Michigan,
for the use and benefit of George Ostapow, against the
Fidelity & Casualty Company of New York upon a
statutory bond.    Judgment for plaintiff.    Defendant
brings error.    Affirmed.

*Angell, Turner & Dyer* (*Walter M. Meek*, of coun-
sel), for appellant.

*Campbell, Bulkley & Ledyard* (*Wilson W. Mills* and
*Edward P. Wright*, of counsel), for appellee.

FELLOWS, J.    Armin Weinberger, who did business
in Detroit under the name of Weinberger & Ziegler,
desiring to engage in the business of selling foreign
steamship tickets and to receive ' the certificate of
the commissioner of banking of the State authorizing
him so to do as provided by Act No. 271, Pub. Acts
1915, as amended by Act No. 399, Pub. Acts 1919,
applied to such commissioner for such certificate,
tendering a bond in proper form with defendant
Fidelity & Casualty Company of New York, a surety

On validity and effect of indemnity bond executed under un-
constitutional statute, see note in L. R. A. 1918C, 834.

company, as surety.  As the bond bore date January 13, 1921, we need not consider the act as rewritten by Act No. 306, Pub. Acts 1921, amended by Act No. 19, First Extra Session 1921 (Comp. Laws Supp. 1922, § 7164 [1-3]).  The bond was accepted and the certificate issued.  The "use" plaintiff desired to bring two relatives to Detroit from Warsaw, Poland. He applied to Weinberger on April 18, 1921, for two tickets for this purpose and paid him $370.68, and there was given to him two papers.  They were not tickets.  In the usual course of business these papers should have been forwarded to the prospective passengers and a coupon designated as "purchaser's receipt" should have been given the purchaser for his money and Weinberger should have sent to his principal a coupon called "advice coupon" together with the money paid by the purchaser less his commission.  This he did not do but appropriated the money to his own use.  Tickets not having been delivered to Ostapow's relatives in Warsaw, he again saw Weinberger and was told that he would have to pay $30 more.  This he did, and was given a receipt. No tickets were ever issued for the transportation of Ostapow's relatives from Warsaw to Detroit.  Weinberger having absconded, this action was brought upon his bond.

On  behalf of defendant it is insisted that the act under which this bond was given offends the Federal Constitution in that it is in conflict with the Fourteenth Amendment, and further, that it places a direct burden on foreign commerce.   It is insisted that the bond, being a statutory bond, falls if the statute falls, and that there can be no recovery upon it.  It is further insisted that even though the statute be valid there can be no recovery because there has been no breach of the bond.

Defendant can not, under the facts of the case, ques-

tion the constitutionality of the act. Both it and its principal, Weinberger, have had the benefits of it and under such circumstances can not question its validity. Defendant has had its premium for executing the bond and Weinberger, until he absconded, all the benefits the act conferred; by the favorable action on his application to the commissioner of banking, he obtained a certificate from that officer, representing the State, authorizing him to engage in the business of selling steamship and railroad tickets for transportation to or from foreign countries. The fact that this particular customer did not deal with him with knowledge of the statute is unimportant. Under the law the certificate was displayed in his place of business; it was in effect a certificate of moral character and financial stability and Weinberger had and enjoyed the full benefit of it. Neither he nor his surety can now claim the act is unconstitutional.

*Daniels* v. *Tearney*, 102 U. S. 415, is a leading case. An ordinance of the State of Virginia was passed in furtherance of the plan of secession. It was admittedly an unconstitutional act. Pursuant to its terms the bond in suit was given. It was said by Mr. Justice Swayne, speaking for the court:

"It is well settled as a general proposition, subject to certain exceptions not necessary to be here noted, that where a party has availed himself for his benefit of an unconstitutional law, he cannot, in a subsequent litigation with others not in that position, aver its unconstitutionality as a defense, although such unconstitutionality may have been pronounced by a competent judicial tribunal in another suit. In such cases the principle of estoppel applies with full force and conclusive effect."

In *Winthrop* v. *Fellows*, 230 Fed. 702, injunction against the officers of the State was sought to restrain them from enforcing the two-cent passenger rate fixed in the railroad act under which the Pere Marquette

Railroad Company was organized, on the ground that such rate was confiscatory and therefore unconstitutional as applied to that railroad. It was there said:

"The present Pere Marquette Railroad Company was organized in December, 1907. At that time the statute of 1907 which is attacked was in force, and was a part of the act under which the railroad company was incorporated, and thus constituted a material part of its charter. The amendment of 1911 did not change or affect the rates of fare which the Pere Marquette was permitted to charge for the transportation of passengers. It follows that the railroad company, its stockholders, as such, and all claiming under it by right of representation, are effectually estopped to question the validity of the statute here under consideration. Having sought and accepted the rights and privileges thereby granted and conferred, they must perform the duties and obligations therein imposed."

Among the cases cited was the similar case of *Commissioner of Railroads* v. *Railway Co.*, 130 Mich. 248. The railway company, in perfecting its reorganization plans, incorporated under the Michigan railroad act which then prescribed a passenger rate as applicable to that company of two and one-half cents a mile. It declined to put such rate into force and mandamus was sought to compel that result. Under the pleadings the rate was admittedly confiscatory and therefore the act, as applied to that company, unconstitutional. But this court there held that the company could not avail itself of the act and then attack onerous provisions of it as invalid. The case was reviewed in the Supreme Court of the United States in *Grand Rapids, etc., R. Co.* v. *Osborn*, 193 U. S. 17 (24 Sup. Ct. 310), and was there affirmed upon the authority of *Daniels* v. *Tearney, supra.*

In the recent case of *Samuels* v. *Couzens*, 215 Mich. 328, the plaintiff had applied for the issuance of a license under an ordinance of the city of Detroit. It

had been refused him and the proceedings were to compel its issuance by mandamus. It was held that he could not question the validity of the ordinance. See, also, *Goodspeed* v. *Wayne Circuit Judge,* 199 Mich. 273; *Interstate Railway Co.* v. *Massachusetts,* 207 U. S. 79 (28 Sup. Ct. 26).

*Shaughnessy* v. *Surety Co.,* 138 Cal. 543 (69 Pac. 250), is in accordance with the doctrine contended for by defendant's counsel, and some things said in *Love* v. *McCoy,* 81 W. Va. 478 (94 S. E. 954, L. R. A. 1918C, 832), sustain their position, but it was there said:

"It is not the policy of the law to permit escape from the legal consequences of the execution of such an instrument, if some one or more of the persons who bind themselves to perform its conditions receive and enjoy its fruits or the protection it affords, or derive some material or financial benefit from it. They will not, in either such event, when summoned to account for a breach of the conditions, be permitted to plead the voidness of the statute necessitating the execution of the undertaking."

Upon the authority of the adjudicated cases and upon fundamental principles of sound law, we think it should be held that, inasmuch as Weinberger enjoyed the benefits of the act in question, neither he nor his surety can assail its validity.

One of the conditions of the bonds was that the principal "shall sell only genuine and valid steamship or railroad tickets for transportation to and from foreign countries." The "use" plaintiff purchased, or supposed he purchased, from Weinberger two tickets from Warsaw, Poland, to Detroit, and paid Weinberger therefor $400.68. This sum, it is admitted, was sufficient. Weinberger gave him certain papers which were not "genuine and valid steamship or railroad tickets" nor did anyone issue to him or

his relatives in Poland "genuine and valid steamship or railroad tickets," and Weinberger pocketed the money.    This was a breach of the bond.

The judgment is affirmed.

WIEST, C. J., and MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.