SAMUEL R. SPENCER, TREASURER OF STATE OF CON-
NECTICUT, *vs.* CONSUMERS OIL COMPANY, INC.

MALTBIE, C. J., HAINES, BANKS, AVERY and ELLS, Js.

Argued June 15th—decided August 16th, 1932.

*Harry M. French,* with whom, on the brief, were *Arthur B. O'Keefe* and *John M. Chapnick,* for the appellant (defendant).

*Ernest L. Averill, Deputy Attorney-General,* and *Bernard A. Kosicki, Assistant Attorney-General,* with whom, on the brief, was *Warren B. Burrows,* Attorney-General, for the appellee (plaintiff).

ELLS, J. The defendant, a licensed distributor of gasoline and kindred fuels under the laws of this State, sold large quantities of gasoline during the months of June, July, August, September, October and November, 1929, and made a monthly report to the commissioner of motor vehicles containing a statement of the number of gallons sold by it during each month and declaring that the defendant had collected a tax of two cents a gallon. This tax was collected and held by the defendant for the State of Connecticut. The state treasurer made demand upon the defendant for $9725.30, the amount shown by these reports to be due, and upon the refusal of the defendant to pay, brought this action.

The complaint alleges that the plaintiff, as state treasurer, is authorized and empowered to enforce the

payment by civil action of any tax accruing to the State of Connecticut under the provisions of Chapter 62 of the Public Acts of 1927, and demands payment of $9725.30 alleged to have accrued to the State as a tax upon gasoline sold by the defendant during the specified months. The defendant moved to erase the cause from the docket upon the grounds that no gasoline tax is levied by this Act, and that the state treasurer is not a proper party plaintiff and is not authorized to enforce payment of this alleged tax. The court denied the motion, whereupon the defendant set up the same two claims in the second defense of its answer, and upon motion the court struck out this entire defense. The third defense raised similar questions, and the plaintiff's demurrer thereto was sustained. The defendant also pleaded by way of set off that between July 31st, 1925, and July 22d, 1929, it had paid the treasurer of the State of Connecticut $66,961.81 in payment of gasoline taxes by virtue of unconstitutional and void statutes. The plaintiff demurred to this set off, and the demurrer was sustained. Upon the trial, the defendant admitted it had made the sales and collected the sums alleged in the complaint, and that these sums represent taxes collected by it at the time of the sales of gasoline to the purchasers, but by claims of law, endeavored to contend that the Public Acts creating this tax are unconstitutional and that if this tax is a valid one the treasurer of the State of Connecticut has no authority to maintain an action to collect it from the defendant, and that it is entitled to a set off. These are the questions raised by the defendant's appeal.

It will thus be seen that this corporation invoked certain of our State laws to establish itself as a licensed distributor of gasoline, conducted a large business under that franchise, collected its own price in full and

in addition a tax for the State of Connecticut of two cents on every gallon sold, as provided by this law, and now refuses to pay over to the State the tax so collected on the ground that the laws which licensed it to sell gasoline and in addition to the regular sale price retained by it to collect for the State of Connecticut a tax of two cents a gallon, were invalid and void and that therefore it can keep for its own use large sums of tax money which admittedly do not belong to it. The mere statement of such a claim constitutes a fair answer and should suffice to defeat it. We have, however, carefully examined into the intricate subtleties of the defendant's argument and will briefly state our conclusions.

A license to sell gasoline was first required by a statute enacted in 1919. A State tax of one cent a gallon was first imposed in 1921 by Chapter 300, § 4. Various regulations were made to provide for the keeping of a record of sale by all distributors and for the rendering of monthly reports of the number of gallons sold to be made to the motor vehicle commissioner and for the payment "to the treasurer of the State[of] a tax of one cent per gallon upon each gallon so reported." Section 7 provides that "whenever any distributor . . . shall fail to pay any tax due under the provisions of this Act within the time limit herein, the attorney general shall enforce payment of such tax by civil action against such distributor or purchaser for the amount of such tax, in a court of appropriate jurisdiction."

In 1923, by Chapter 203, a slight change was made in the section concerning definitions, and a section was added providing that the funds raised by this tax shall be expended for highways by the highway commissioner.

In 1925, an entirely new Act was passed (Public Acts, Chap. 146) which expressly repealed the 1921

and 1923 Acts. The Act is in seven sections. In § 4, which has to do with the creation of the tax, two important changes occur. The tax is raised to two cents a gallon, and fuel for motor-boats is exempted from the tax. In § 7 "the commissioner" (presumably the motor vehicle commissioner) is named as the person authorized to enforce payment of the tax.

It is stipulated in the record that this Act was not signed or approved by the Governor until more than three days subsequent to the final adjournment of the legislature. The defendant claims that this Act was therefore unconstitutional.

In 1927, by Chapter 62, the first section of the 1925 Act was "amended to read as follows." There ensued a complete re-enactment of the section concerning definitions. Section 2 "is amended to read as follows." There ensues a complete and independent enactment providing that a distributor must be licensed. Section 3 of the new Act amends § 4 of the 1925 Act by tightening the phraseology as to the payment of the tax. This section is a complete re-enactment, amounting to an independent enactment of a law providing for a tax of two cents per gallon, and provides complete machinery for the checking up of sales made by the distributor, and provides that the tax so collected shall be paid each month "to the treasurer of the State." In § 4 the new Act provides, for the first time, for a bond of $10,000 to be filed with the commissioner of motor vehicles conditioned for the payment of the tax. Four other sections are added, two concerning a revocation of license, one concerning interest, and one providing for an appeal. This is the Act upon which the complaint is founded.

The defendant contends that the Act of 1927, being an amendment of the Act of 1925 which is unconstitutional, must also be ineffective. We have no occa-

sion to consider the conflicting decisions of other jurisdictions as to the effect upon an amending act of the invalidity of the act which it purports to amend. The defendant accepted a license to do business as a distributor under the Act in question in each year during which the money which the State is claiming was collected by it; it acted in collecting that money from consumers under the terms of the Act; and made monthly reports of such collections to the commissioner as required by the Act. It cannot, having acted under the statute to the detriment of others, now claim that the statute was unconstitutional and void. *Coombs* v. *Larson,* 112 Conn. 236, 247, 152 Atl. 297; *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 57, 154 Atl. 161; *United Fuel Gas Co.* v. *Railroad Commission,* 278 U. S. 300, 49 Sup. Ct. 150, 73 L. Ed. 390; *Grand Rapids & Ind. Ry. Co.* v. *Osborn,* 193 U. S. 17, 29, 24 Sup. Ct. 310, 48 L. Ed. 598; *Baltimore & O. R. Co.* v. *Lambert Run Coal Co.,* 267 Fed. 776; *Owens* v. *Corporation Commission of Oklahoma,* 41 Fed. (2d) 799; *American Bond & Mortgage Co.* v. *United States,* 52 Fed. (2d) 318; *People* v. *Fidelity & Casualty Co.,* 222 Mich. 296, 192 N. W. 658; *Hershey* v. *Reclamation District No. 108,* 200 Cal. 550, 564, 254 Pac. 542; *Booth Fisheries Co.* v. *Industrial Commission,* 185 Wis. 127, 200 N. W. 775; 12 C. J. p. 760.

We therefore decide that there was a valid and existing debt owing from this defendant to the State of Connecticut, and payable to the state treasurer. It may well be said that it is more than a debt, for it is in essence a fund collected by it for and in behalf of the State. It is a species of trust funds which it holds for the State. Having arrived at this conclusion, we readily find the answer to the defendant's second major proposition. The contention is that the 1925 Act authorized "the commissioner" to enforce payment

and that the Act is unconstitutional and void; and that if it is valid it precludes action by the state treasurer; that the plaintiff relies on the Act of 1927, which does not authorize any officer to sue; that the 1929 Act which authorizes the state treasurer to sue was also invalid because not signed by the Governor within the constitutional period. The answer is that if the defendant has collected a sum of money for the State, which it owes to the State, and which is payable "to the state treasurer," the sovereign State of Connecticut is not a helpless supplicant merely because the Act creating the debt or trust fund does not specifically state which of its officers may enforce payment. The money is payable "to the state treasurer." He has power, indeed he is charged with the clear duty, to collect this debt. This seems almost too plain to require discussion. Section 82 of the General Statutes provides that the state treasurer "shall superintend the collection of the state . . . revenue." Section 149 provides that the attorney general "shall appear for the . . . treasurer . . . in all suits and other civil proceedings." In the case of *State* v. *New York, N. H. & H. R. Co.*, 60 Conn. 326, 334, 22 Atl. 765, a corporation refused to pay because "the statutes of this State now in question do not provide any means by which the tax therein imposed can be collected." The court held that such actions have been repeatedly brought in the name of the State and therefore must be regarded as warranted by usage.

There is a conclusive reason supporting the right of the state treasurer to bring this action. It was not brought until October 15th, 1930. At that time the claimed invalidity of the 1929 Act, which specifically authorizes the state treasurer to bring suit, had admittedly been cured and corrected and the Act had taken

effect as a part of the Revision of 1930 of the General Statutes.

The defendant's argument that the state treasurer must have been qualified to sue for the tax at the time that it accrued is based on a misconception. We are dealing now with a matter of procedure. We have established the substantive right of the State to the tax. The treasurer is merely designated as an agent of the State for the collection of an amount due and belonging to the State. The 1929 provision has become § 1683 of the General Statutes, and has not been attacked in the defendant's assignments of error. At the time of the institution of this action the state treasurer was duly empowered to bring it.

The defendant further contends that the 1927 Act, if valid, provided for a bond, and that it intended a suit on the bond to be an exclusive remedy. The failure of the Act to provide specifically for the collection of the tax by civil action seems to lend color to the claim. No such intention is expressed, however, and it is much more likely that the intention was to add security by a good bond. It would be a strained construction, and one not warranted by the legislative language, to interpret it as giving up an existing right to enforce collection by the usual and ordinary civil action.

The demurrer to paragraphs nine and ten of the defendant's set off was properly sustained. The defendant alleged that between July 31st, 1925, and July 22d, 1929, it paid the state treasurer $66,961.81 in payment of taxes for the sale of gasoline as provided for by certain void statutes. There is no allegation that this money was paid under mutual mistake either of fact or of law, or under fraud or under duress. There is no allegation that the payment was made under any protest whatsoever. So far as appears from the pleadings,

the defendant made these payments voluntarily with full knowledge of the facts. Even if it might be argued that there was a suggestion of duress in the interest clause, there is no allegation that it was paid because of any duress. Under our modern Connecticut law, a taxpayer need not wait until actual force or duress is used to compel payment, but may pay under protest and sue for recovery, if the statute under which the tax is levied and collected provides for distress levies or other forms of duress. This defendant did not pay under protest, nor does any species of duress appear. It cannot recover money paid in the manner and under the conditions disclosed in the set off. *Verran Co.* v. *Stamford,* 108 Conn. 47, 142 Atl. 578.

"Our rule as to recovery of money paid under a mistake has long been well-settled. The payor must act under a mistake of his rights and duties, and be free from any moral or legal obligation to make the payment; and the payee must in good conscience have no right to retain it. When these conditions exist the money may be recovered whether it was paid under mistake of fact or of law." *Gilpatric* v. *Hartford,* 98 Conn. 471, 480, 120 Atl. 317.

In the present case the defendant has in good conscience no right to retain this money and is charged with a heavy moral obligation to make the payment.

The remaining assignment of error has to do with the inclusion of interest in the judgment. Section 7 of the 1927 Act plainly provides for interest and the court has correctly computed it.

There is no error.

In this opinion the other judges concurred.