JOSEPH E. TALBOT, TREASURER
*vs.*
FAIR-CHESTER OIL CO., INC.

Superior Court      Hartford County      File No. 62033

MEMORANDUM FILED AUGUST 13, 1940.

*Francis A. Pallotti*, Attorney General, and *Frank J. DiSesa*, Assistant Attorney General, for the Plaintiff.

*Austin A. Lawler, William J. Mulligan, Spellacy & Yeomans*, and *Robinson, Robinson & Cole*, all of Hartford, for the Defendant.

KING, J. This is an action by the State of Connecticut, as plaintiff, against the defendant, a distributor of gasolene, to recover, with interest, the tax imposed under the provisions of chapter 84 of the General Statutes, Revision of 1930, as amended, on gasolene admittedly received by the distributor in its shore tanks between July 1, 1933 and December 31, 1939, on which admittedly no tax has been paid.

The defendant, during the period in question, purchased practically all of its gasolene from a refinery in Bayonne, New Jersey, whence it was delivered by barge to the defendant's shore tanks, in East Portchester, Connecticut. The State is making no attempt to tax certain gasolene purchased by the defendant from the refinery, but which in one way or another was lost in transit between the refinery and the defendant's shore tanks. The State is claiming the tax on all of the gasolene actually received by the defendant in its shore tanks. The defendant admittedly sold or used most of this gasolene, and paid the tax thereon as and when due. But between the gasolene reported as sold or used by it, and on which it properly paid the tax, and the total amount actually received in its shore tanks, there is an admitted total discrepancy of

189,508 gallons during the above period of six and one-half years. These discrepancies, computed by months, are referred to as "differences."

## I. *Nature of Tax.*

The tax in question is not claimed by either side to be a property tax. It was held to be an excise tax on the consumer based on the latter's use of the highways, of which tax the distributor was constituted the tax collector, in *Texas Co. vs. Blue Way Lines, Inc.*, 93 F. (2d) 593, a construction based on an interpretation of the decision of our own Supreme Court in *Spencer vs. Consumers Oil Co.*, 115 Conn. 554. The opinion in the latter case makes it clear that the court regarded the statute as constituting the distributor a collector of a tax imposed on the consumer of gasolene. The legislative history of the tax in its early years is outlined in the *Spencer* case. Although the plaintiff correctly points to amendments subsequent to the decision in that case, it does not specify any which might fairly indicate any legislative disagreement with, or intent to change, the rationale of the tax as therein indicated. Nor do I find any amendment leading me to any different conclusion.

While a statute granting exemption from taxation of persons or property otherwise within the general scope of a taxing statute is to be strictly construed, although not so strictly as to defeat the expressed intention of the General Assembly (*Blodgett vs. Bridgeport-City Trust Co.*, 115 Conn. 127, 134), the rule is somewhat more liberal in determining what persons or property, without consideration of exemption statutes, fall within the general scope of a taxing statute. *Cornwall vs. Todd*, 38 Conn. 443, 447. The doctrine of strict construction does not apply, and the question remains as to what is the reasonable intent of the General Assembly as expressed in the taxing statute. *Ibid.*

## II. *Scope of Tax.*

The general scope of the taxing statute is to be determined, of course, by ascertaining the expressed legislative intent in the whole statute, although the particular section supposedly covering this point in this case is section 1676 of the General Statutes, Revision of 1930, as amended by section 654c of the 1935 Cumulative Supplement to the General Statutes. This section, considered alone, purports to lay "for the account of the purchaser or consumer a tax of three cents upon each gallon

cf....[motor] fuels sold or used in this state during the preceding calendar month."

This language is in complete accord with the interpretation of the Circuit Court of Appeals in *Texas Co. vs. Blue Way Lines, Inc., supra,* that the tax is an excise tax on the consumer for the use of the highways.

The refund granted purchasers of such fuels not used in propelling motor vehicles over Connecticut highways, in section 656c of the 1935 Cumulative Supplement to the General Statutes, as amended by 557e of the 1939 Supplement to the General Statutes, as well as the provision in section 658c of the 1935 Cumulative Supplement, that the tax funds shall be used for highway purposes, are inexplicable except on the theory that the tax is on the use of the highways by the consumer. Although taxing statutes differ so widely in the various states that judicial interpretations are not very helpful, this conclusion as to the nature of our tax finds support in the decision of the Supreme Court of the United States in *Mona-motor Oil Co. vs. Johnson,* 292 U.S. 86, 78 L. ed. 1141.

The predecessor of section 654c of the 1935 Cumulative Supplement to the General Statutes, section 1676 of the General Statutes, Revision of 1930, exempting motor boat gasolene from the tax, as well as section 1677 of the General Statutes, Revision of 1930, and its obvious substitute, section 656c of the 1935 Cumulative Supplement, are inconsistent with any other interpretation of the nature of the tax. The present section 557e of the 1939 Supplement to the General Statutes, apparently denying the refund as to gasolene used on a highway without the State, brings this provision into harmony with the theory of taxing all gasolene sold within the State, although in some localities adjacent to the State line relatively little of that sold would be used in the propulsion of motor vehicles over Connecticut highways.

The inconsistency of section 557e with the use of the modifying phrase "in this state" after "sold or used" in section 654c, and the absence of the modifying phrase after the words "sold or used by him" in section 653c, merely give further evidence of the careless draftmanship of this unfortunately worded act.

That owners of motor cars also pay, through registration fees and personal property taxes, other monies which may, in whole or in part, be expended for highway improvement pur-

poses, does not impose any constitutional barrier to the adoption of the foregoing construction of the act. *Interstate Busses Corp. vs. Blodgett,* 276 U.S. 245, 249, 72 L. ed. 551, 554.

I conclude, therefore, that the legislative intention, as expressed in the act, is to tax gasolene "sold or used." Gasolene which is lost by evaporation or spillage is neither sold nor used, and does not come within the general scope of the taxing statute. This conclusion is reinforced by the practical, and in my opinion correct, construction placed upon the act by the Attorney General's office, in holding that the tax was not payable on gasolene stored in the State but lost in the flood.

### III. *Burden of Proof.*

This leaves for determination the question on whom rests the burden of proving the amount of gasolene neither sold nor used, but lost. At first thought it would appear that the burden was on the taxing authorities to bring the property sought to be taxed within the general scope of the taxing provisions of the act.

The pertinent language in section 654c of the 1935 Cumulative Supplement to the General Statutes, is "each distributor shall, on or before the fifteenth day of each month, render a report to the commissioner of motor vehicles, which shall state the number of gallons of fuels *sold or used* in this state by him during the preceding calendar month, on forms to be furnished by said commissioner, and such report shall contain further information as the commissioner shall prescribe." (Italics added.)

Section 653c provides that "each distributor shall keep an accurate record of the number of gallons of such fuels purchased, manufactured, compounded or received by him, the date of any such purchase [sic] and the number of gallons sold or used by him. . . . The commissioner shall cause such records and statements to be regularly audited as he shall prescribe and each distributor shall satisfactorily account for all such fuels as have been sold or used by him."

It is possible, as counsel have done, to make a fairly strong argument, either way, as to this question of burden of proof, based on these quoted sections.

However, it is necessary to attempt to extract some definite expression of legislative intent as to this vital matter. Inapt

as this phraseology is, I can see no very good reason for requir-
ing the distributor to keep accurate records of the gallons of
gasolene "purchased, manufactured, compounded or received"
as well as of gallons of gasolene sold or used by him, unless it
was intended to require the distributor to keep such records as
would show what became of the gasolene which he "purchased,
manufactured, compounded or received." The use of the
word "account" for the gasolene sold or used indicates, in con-
nection with the balance of section 653c, an intention to force
the distributor to account for such part of the gasolene pur-
chased, manufactured, compounded or received as was not
sold or used.

It is my opinion that effectively, although crudely, the
language of the act throws upon the defendant the burden of
proving how much, if any, of the gasolene purchased, manu-
factured, compounded or received by it was neither sold nor
used by it, and, therefore, was not taxable. 17 Op. Atty.
Gen. 311.

Although denying that the burden of proof in this respect
rested upon it, the defendant did offer proof of the extent of
such lost gas. Admittedly it is impossible for it to prove this
amount with absolute accuracy in gallons. If such accuracy
is required, then the defendant must utterly fail in its case.
But having in mind the nature of the substance involved, which
must have been generally known to the General Assembly when
it enacted the legislation, substantial accuracy would seem to
me to be sufficient. The situation seems analogous to the rule
as to the sufficiency of a plaintiff's proof of damages where
absolute accuracy is impossible. *Comstock vs. Conn. Ry. &
Lt. Co.*, 77 Conn. 65. Under this interpretation I find that the
defendant sustained its burden of proof to the limited extent
hereinafter set forth.

### IV. *Effect of Refund Section*

One further claim of law on the part of the State must be
noted. That involves the proper construction of section 655c of
the 1935 Cumulative Supplement to the General Statutes. And
on this section the State heavily relies. The State claims that
the provision allowing the distributor to retain one per cent
of the tax "to cover the expense of collection of said tax and
loss by reason of shrinkage", puts an outside limit of one per
cent of the tax on the amount which may be retained or
deducted by the distributor.

This statute first appeared in 1933. At that time the words "sold or used" were in effect in section 1676 of the General Statutes, Revision of 1930. Thus the General Assembly must have thought that the two sections could be harmonized.

It seems to me that the most reasonable and natural interpretation to give this section is that it allows a one per cent credit on the tax in any event, and if a particular distributor is able to show that of the gasolene reported under section 653c as purchased, manufactured, compounded or received by him, in fact he neither sold nor used any given amount, he need not pay a tax on such amount, because, although purchased, and, so, reported under the provisions of section 653c, it was neither sold nor used by him, and, so, never fell within the general scope of the taxing clause as gasolene sold or used. It is not an exemption. It never fell within the general scope of the taxing clause.

It should be noted that in no event can the distributor receive more than one per cent of his collectible tax for costs of collection and that he cannot receive this entire amount on costs of collection if he has any losses in volume (shrinkage) unless he sustains the burden of proving the shrinkage losses in their entirety. The evidence makes it clear that this cannot be done. To the extent that he fails in such burden of proof, and to some extent he necessarily must, his shrinkage losses must be reimbursed along with his costs of collection out of the arbitrary one per cent allowance. The defendant is entitled to nothing in any event for its costs of collection over the one per cent which it has already received under section 655c.

The General Assembly could hardly have felt safe in agreeing to reimburse a distributor for all costs of collection, since this would remove all inducement to economy or efficiency in making collections. Furthermore, the practical difficulties in the way of ascertaining what the actual costs of collection were, would be insurmountable. This fact is obvious, but was also borne out by the testimony of the defendant's witness Berg, who attempted, in part, to do this very thing.

The evidence presented by the defendant bearing on its costs of collection was relevant only as it tended to assist in construing the act. As pointed out by the State, it is not unusual for legislative bodies to force industries to act as tax collectors without compensation, and even, as here, to be

guarantors of the solvency of any consumer to whom the distributor sees fit to sell on credit. The constitutionality of statutes making such provisions has not been successfully attacked. With their fairness the General Assembly, rather than this court, is concerned.

This construction would give effect to a natural appreciation, on the part of the General Assembly, of the fact that the burden of proving that gasolene purchased, manufactured, compounded or received by the distributor was neither sold nor used had been, as claimed by the State, placed on the distributor, and of the fact that the problem of sustaining this burden of proof was an extremely difficult one, impossible of complete attainment, and even to the extent possible might well be thought, especially by the small distributor, not to be practically feasible, because of the expense and other inherent difficulties incident to sustaining such burden.

The State's point that it is rather ridiculous to pick out distributors of gasolene as a favored group and allow them a rebate on gasolene actually used by them on the highways although denying the rebate to any other such user is an excellent point for consideration by the General Assembly. But it does not seem to be necessarily unreasonable to fix one per cent of the tax on gasolene sold or used as an arbitrary allowance for costs of collection and all other losses (shrinkage), when we realize that in many states a three per cent allowance is made. The Attorney General's office seems to have construed section 655c as providing for an arbitrary allowance when the matter was first brought up for construction in 1933, although no ruling was then made on the State's present contention that the General Assembly, in laying a tax on gasolene "sold or used" by the distributor, meant to lay the tax on gasolene received into the shore tanks of the distributor regardless of its subsequent fate. 18 Op. Atty. Gen. 187. For some reason the State has been to some extent inconsistent with its present position in its failure to tax gasolene lost in the flood, and perhaps also in beginning its computation with gasolene received in the distributor's shore tanks rather than with gasolene purchased f.o.b. refinery.

The State correctly claims that in attempting to construe the act it should be considered in its entirety. But to distort the natural meaning of the general taxing clause "sold or used", on the basis of a refund section, is analogous to the

contention made in *Wise vs. Berger*, 103 Conn. 29 where, in denying that the main part of a statute could be controlled by a conflicting proviso, the court said, on page 35, "no needless and inefficacious proviso can impose such a [construction] by negative implication." Here a reasonable rational harmonization can be made of the two sections under the construction I have adopted.

V. *Facts Proved by Defendant.*

By stipulation the parties agreed that of the gallons reported as received by the defendant in its shore tanks between July 1, 1933 and December 31, 1939, 189,508 gallons were not reported by the defendant as having been either sold or used.

It follows that on this number of gallons the defendant has paid no tax, and of course, has received no allowance under section 655c. To recover the tax on this gallonage, plus interest, this suit was brought. The defendant has the burden of proving that this gasolene was neither sold nor used by it.

The defendant's plant was materially altered around October, 1934. The exact date when such alterations were completed was not proved except that they were definitely completed prior to January 1, 1935. Since that date, at least, the defendant's plant has remained substantially unchanged, physically.

By reason of failure to prove the substantial similarity of plant conditions essential to the application of its expert testimony, for the period up to January 1, 1935, the defendant necessarily failed to sustain the burden of proving that the so-called "differences" claimed by the State in subdivisions 1 through 18 of paragraph 3 of the complaint represented gasolene neither sold nor used. The State is entitled to recover these amounts. The claim of interest on these amounts will be hereinafter discussed.

During periods in the years 1935, 1936 and 1937, the duration of which periods was not definitely established, the defendant had certain transactions with a subsidiary company, known as the Mohawk Sales Corporation, and with certain other companies. The factual uncertainties produced by these transactions necessarily prevent the application of the expert testimony offered by the defendant to its operations during these three years, and as to these years, also, the defendant failed in its burden of proof. It follows that the State is en-

titled to recover the tax on the gallonage claimed in subdivisions 19 through 52 of paragraph 3 of the complaint. Here again, discussion of the question of interest is deferred.

The defendant's expert testimony established that as its plant was equipped and operated since some time prior to January 1, 1935, its filling or withdrawal losses would be 0.198 per cent, its breathing losses would be 0.2 per cent, and its truck tank filling losses would be 0.234 per cent, making a total of 0.632 per cent, not including an additional negligible item of 0.05 per cent losses on the small yard tank. This total is sufficiently above the difference figure of 0.44 per cent claimed for the years 1938 and 1939 to make it reasonable to believe that the difference figures for these two years represent gasolene neither sold nor used. There are other losses, which the defendant did not attempt to estimate, and which could not be estimated, as a practical matter, by anyone. These must be covered, if at all, by any balance (which in the case of this defendant, according to Berg's testimony, was non-existent) of the one per cent rebate over the actual costs of collection. Presumably the General Assembly realized the situation, and in part, at least, met it in the case of an efficient collector, by the rebate allowance.

In my opinion this expert testimony was sufficient to warrant, support and justify the finding, which I make, that the defendant proved by a fair preponderance of the evidence that the gallons represented by these difference figures during the years 1938 and 1939 were neither sold nor used, and, so, were not taxable under the act. *Comstock vs. Conn. Ry. & Lt. Co., supra, 67.*

The State is not entitled to recover the amounts claimed in subdivisions 53 through 74, both inclusive, of paragraph three of its complaint.

While there was abundant testimony, which I fully credited, that the defendant's plant, at least from January 1, 1935, was reasonably efficient in comparison with similar plants, in construction, design and operation, this fact is immaterial. The question is, was the gasolene sold or used. It is of no concern to the State, except as it might aid, by giving a comparison with similar plants, in checking the accuracy of a particular distributor's reports, whether his plants are efficient or inefficient. As far as the State is concerned with the collection of this tax,

the distributor could deliberately empty the gasolene from the tanks onto the ground and if he proved this fact and that it was thereafter neither sold nor used, he would not be liable for any tax.

As pointed out in the defendant's brief, according to the State's contention, a distributor would be required to pay on the entire contents of a shore tank of gasolene from which no withdrawals were made from the date of filling until ultimate complete evaporation. Certainly the General Assembly would have been singularly inept in selecting the words "sale or use" to describe such an event. And a tax on such gasolene would hardly be seriously claimed to be levied "for the account of the purchaser or consumer" as an excise tax on the use of highways by motor vehicles.

## VI. Interest.

The parties are also in dispute as to the right of the State to collect interest on any sums which may be found due it. The statute provides for the recovery of interest (Gen. Stat. [1930] §1678; *Spencer vs. Consumers Oil Co., supra,* 562), and the defendant must be held to have had its equivalent in the use of the money during this interval. The express mandate of the statute cannot be set aside.

Even assuming that the express mandate of the statute as to interest might, under very exceptional circumstances, be waived, I do not feel that the defendant has brought itself within the Connecticut rule that on an unliquidated demand the amount of which cannot be ascertained, interest does not run. *Gilpatric vs. National Surety Co.,* 95 Conn. 10, 25. The defendant, theoretically at least, must be held to have known all along the construction which the act ultimately receives in the courts. It thus failed to pay a demand which as matter of law it must be held was ascertainable. It, rather than the State, knew what portions of the gasolene purchased, manufactured, compounded or received it was unable to sustain its burden of proving had neither been sold or used.

## VII. Laches or Estoppel.

The delay of the State in asserting the present deficiency claims is unfortunate. But I do not find that the defendant was handicapped in making out its case by reason of this delay. Its expert formulae applied to all years equally, at least beginning in 1935. Therefore I do not find that the State has been

guilty of laches or other conduct disentitling it to maintain this action. The claim that the State's action in making no demand for a tax on the difference figure appearing in item 18 of its reports to the Motor Vehicle Commissioner operated to lure the defendant into the belief that the act was clear and unambiguous and thereby caused the defendant to refrain from applying to the General Assembly for legislative relief, would not amount to laches or estoppel, especially since there was no proof that such appeal to the General Assembly would otherwise have been made, or, if made, would have been successful. *Tradesmen's National Bank of New Haven vs. Minor,* 122 Conn. 419, 424.

Much the same answer may be made to the defendant's claim, unsupported by testimony, that it was induced not to claim a refund under section 656c. Its method of using evaporation and spillage loss formulae in proving that the "differences" represented gasolene neither sold nor used, may be as conveniently and accurately pursued now, as at the time the tax was due. At least there was no sufficient evidence to the contrary.

## VIII. *Conclusion.*

It is possible to raise various objections to the construction herein adopted, based upon the obvious shortcomings in the draftmanship of the act. These objections are ably pointed out in the searching briefs filed by both parties. However, I feel that greater objections could be raised to any other construction, and that that herein adopted fairly carries out the expressed intent of the General Assembly construing the act as a whole.

It may also be noted that the various opinions of the Attorney General interpreting the act contain nothing inconsistent with the construction given the act in this opinion. 12 Op. Atty. Gen. 62; 14 id. 112; 16 id. 112; 17 id. 311; 18 id. 187.

It is to be hoped that appropriate amendments, precisely phrased and based on a careful study of the entire act, may be enacted at the next session of the General Assembly, so that all persons affected by this act may be able to govern their conduct in conformity with a clearly worded statutory enactment. Such is obviously impossible now.

The plaintiff, State of Connecticut, is entitled to recover the

aggregate of the amounts of tax deficiency, with interest, as claimed in subdivisions 1 through 52, both inclusive, of paragraph 3 of its complaint, less the one per cent refund provided by section 655c.

The total of these taxes due, exclusive of interest, I compute to be $3,576.13. Since the defendant is being compelled to pay this amount as a tax on gasolene which it sold or used, it is entitled to the refund credit of one per cent of such tax as authorized by section 655c, and I do not think that its failure specifically to refer to this right of refund in its answer operates to forfeit the benefit of the express statutory enactment, especially since the case is a test case wherein the real issues were the proper construction of the act, as distinguished from the mere collection by the State of money due it by this defendant as was the case in *Spencer vs. Consumers Oil Co.*, 115 Conn. 554, 562.

One per cent of $3,576.13 I compute to be $35.76, leaving a net tax balance due of $3,540.37. Interest, as claimed, up to the date of the complaint, I compute to be $1,289.72. This gives a total of $4,830.09. The plaintiff is entitled to nine per centum per annum on the actual tax indebtedness up to the date of payment. *Spencer vs. Consumers Oil Co., supra*, 562 (Conn. Supreme Court Rec. and Briefs, Vol. A-25, p. 150).

Judgment may therefore enter for the plaintiff to recover the sum of $4,830.09, plus interest on the sum of $3,540.37 from January 24, 1940, at nine per centum per annum up to the date of satisfaction of this judgment.