FRANK M. ANASTASIO, TREASURER *v.* GULF OIL
CORPORATION.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued Nov. 21, 1944—reargued Feb. 20, 1945—decided April 3, 1945.

*Matthew S. Gibson,* of the New York bar, with whom was *W. Arthur Countryman, Jr.,* for the appellant-appellee (defendant).

*Frank J. DiSesa,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellant-appellee (plaintiff).

*Leon M. Gabriel* filed a brief as amicus curiae.

MALTBIE, C. J.   This action, one of a large number of similar suits, was brought by the treasurer of the state of Connecticut to recover taxes which the state claims to be due from the defendant, a distributor of gasoline, under statutes imposing a tax upon gasoline and other fuels.   Each year, for a number of years, the defendant had made to the motor vehicle commissioner, as required by the statutes, monthly reports upon forms prescribed by him, upon the basis of which the amount of tax it was required to pay was to be computed.   These forms varied from year to year,

but the one of which a copy is given in the footnote [1]
is sufficiently typical to serve the purposes of this opin-

[1] SCHEDULE "B"
STATE OF CONNECTICUT
MOTOR VEHICLE DEPARTMENT
GASOLINE TAX DIVISION

State Office Building       Hartford, Connecticut

To MICHAEL A. CONNOR, Commissioner.

Distributors monthly report of fuels sold or used in this State, as required by Chapter 303 of the Public Acts of 1933.

1. NAME OF DISTRIBUTOR Gulf Oil Corporation
2. Post office address..#17 Battery Place, New York City, N. Y...
3. Nature of business..Manufacturer, Compounder, Refiner......
(refiner, manufacturer, compounder, dealer)
4. Month for which return is made....July....1938.
5. Number of gallons sold as taxable (Includes 2,587 gals. Fuel Oil).................................... 1,022,067⅓
6. Number of gallons used by Distributor as taxable.... 7,080½
7. Number of gallons used by Distributor as non-taxable 96½
(State purposes for which this gasoline was used by distributor as non-taxable)..................Pumping Fuel Oil
8. Number of gallons sold without tax to U. S. Government ........................................ 661½
(Sales to be itemized in schedule A.)
9. Number of gallons sold without tax to licensed Distributors ..................................... 1,308,250
(Sales to be itemized in schedule B.)
10. Number of gallons transferred from storage within this State, to a terminal outside of this State........ 162,707
(Transfers to be itemized in schedule C.)
11. Number of gallons sold without tax on account of the fact that actual delivery of such gasoline was made by the selling Distributor outside of Connecticut.... 88,499
(Sales to be itemized in schedule D.) Non-Taxable Naphtha Sales ................................... 2,877
MOTOR FUEL INVENTORIES AND PURCHASES
12. Gallons of gasoline or motor fuel on hand at beginning of month .................. 1,938,760
13. Add gallons received during month...... 2,610,379
14. Total ........................... 4,551,726
15. Deduct gallons on hand at end of month 1,948,313
16. Gallons to be accounted for............. 2,603,413
17. Total gallons accounted for in this report as being sold, used or transferred........ 2,592,142⅓
18. Difference ......................... 11,270⅞

ion.  The first part of each report consisted of a statement of all gasoline sold, used or transferred by the defendant.  The second part stated the amount of gasoline on hand at the beginning of the month, the amount received during the month, and the amount on hand at its end; in this way the amount to be accounted for was determined; the number of gallons which had been covered by the first part of the report were then deducted; and this left a balance, which was entered merely as "Difference."  The third part was a summary of items taken from the first part as the basis upon which tax was to be computed, with a deduction of 1 per cent as "distributors allowance."  Each month the commissioner of motor vehicles certified to the state treasurer the amount of tax due from the defendant in accordance with the summary in the third part of the report, upon forms of which a copy is given in the footnote,[2] and the defendant, upon de-

---

SUMMARY SHOWING TAX DUE THIS STATE FOR THE MONTH
COVERED BY THIS REPORT

| 19. Tax on gallons sold as taxable | $30,662.02 | |
| 20. Add tax on gallons used as taxable | 212.42 | |
| 21. | 30,874.44 | |
| 22. Deduct distributors allowance of 1% | 308.74 | |
| 23. Amount of tax due at 3c per gallon | | $30,565.70 |

[2]     GASOLINE TAX

STATE OF CONNECTICUT
DEPARTMENT OF MOTOR VEHICLES
Hartford, ............ 193

To ....................
State Treasurer:
    I hereby certify that the Tax on Gasoline defined by Sec. 1676 of the General Statutes, as amended for the period from .................... to .................... inclusive levied against ........................................................

........................................................
amounts to $.............................
    Michael A. Connor, Commissioner
Date Paid ............... 193      By .................

Remarks:

mand of the treasurer, paid the amount so certified. In determining the amount of taxes certified to be due, no account was taken of the gasoline appearing in the report under the item "Difference." This action was brought to recover an additional amount of taxes based upon this "Difference." The case was referred to a referee, who found the facts and concluded that a very considerable sum was due the plaintiff from the defendant; his report was accepted by the court, with a few corrections; and judgment was rendered for the plaintiff. Both parties have appealed.

The tax in question was first imposed by an act passed in 1921. Public Acts, 1921, Chap. 300. In 1933, two acts with reference to the tax were passed. One amended the law in several respects; Public Acts, 1933, Chap. 303; in § 5 it required that each distributor should report the number of gallons of fuels which he "sold or used in this state," upon forms to be furnished by the commissioner of motor vehicles which were to contain such further information as he might prescribe; and the tax was to be paid "to the state treasurer for the account of the purchaser or consumer" upon each gallon of fuels "sold or used in the state . . . except such fuels as may have been sold to the United States government, or sold by one licensed distributor to another licensed distributor, or transferred from storage within this state to some point outside of this state, for sale or use outside of this state." The other act passed in 1933 provided: "Each distributor may retain one per cent of the tax on gasoline required under the provisions of [the statute in question] to cover the expense of collection of said tax and loss by reason of shrinkage." Public Acts, 1933, Chap. 267. In preparing the Supplement to the General Statutes for 1933, the statute revision commissioner combined the provisions of § 5 of Chapter 303

and Chapter 267 into a single section. General Statutes, Sup. 1933, § 466b. Section 15 of Chapter 228 of the Public Acts of 1935, as printed among the bills engrossed and signed by the governor, reads: "Section 466b of the 1933 supplement to the general statutes is amended to read as follows." Then appears an exact quotation of the language of § 466b except that the tax was increased from two to three cents and except for the omission of the words: "Such distributor may retain one per cent of the amount of such tax to cover the expense of collection thereof and loss by reason of shrinkage." Nevertheless, in the Cumulative Supplement to the General Statutes for 1935, that provision appears as a separate section. General Statutes, Cum. Sup. 1935, § 655c.

When we came to study the case before us, we were unable to consider it from the standpoint upon which it was, to a great extent, presented to us at the argument, because throughout the proceedings in the trial court and before us all parties had assumed that § 655c was a part of the statute law of this state, and the conclusions reached by the referee and the trial court depended to a considerable extent upon the effect to be attributed to it. Although no question was raised in the proceedings below as to the validity of § 655c, we could not overlook the statutory situation. *Adley Express Co., Inc.* v. *Darien,* 125 Conn. 501, 504, 7 Atl. (2d) 446. We, therefore, ordered a reargument directed specifically to the question whether § 655c was law and, if not, the effect this fact would have upon the issues.

The powers of the statute revision commissioner are stated in § 2221 of the General Statutes and § 877c of the Cumulative Supplement of 1935. He has no power to continue as law a statute which the legislature has repealed; nor are the supplements he prepares ever

submitted to the legislature for its approval, as are revisions of the General Statutes. General Statutes, p. 2009. Section 466b of the Supplement of 1933 had of itself no force as law except as it correctly embodied provisions enacted by the General Assembly. When, in 1935, the Assembly proceeded to pass the act expressly amending § 466b, the terms of the section as printed in the supplement were adopted by it as its own; and when it re-enacted that section with the omission of the provision authorizing distributors to retain 1 per cent of the tax it repealed that provision. *Aston Motor Car Co.* v. *Mannion*, 92 Conn. 568, 103 Atl. 655. The Public Acts of 1935 took effect on July 1 of that year; General Statutes, § 6569; no tax in question in this case arose before January, 1936; and consequently the issues must be decided without regard to that provision, except for any possible light it may shed upon the meaning and effect of those provisions of the statute which have been duly enacted.

As the act imposing the tax stood in 1935, and as it still stands except for some minor changes not material to the issues before us, it may be summarized as follows: The word "Fuels" is in general defined, by reference to the definition given in the act generally regulating motor vehicles, to mean "gasoline, benzol or other products, to be used in the propelling of motor vehicles using combustible type engines over the highways of this state, and gasoline that is sold or used for any purpose within this state," except such as is sold to the United States government or is transferred from storage within this state to some point outside the state, for sale or use there. General Statutes, Cum. Sup. 1935, §§ 644c, 539c. Any person selling or offering for sale "any gasoline or other product intended for use in the propelling of motor vehicles using combustible type engines over the highways of this state"

is required to obtain a license from the commissioner of motor vehicles. § 645c. Each distributor must keep an accurate record of the number of gallons of fuels purchased, manufactured, compounded or received by him, and the number of gallons "sold or used by him"; and each distributor must "satisfactorily account for all such fuels as have been sold or used by him." § 653c. Each distributor is required to make a monthly report to the commissioner stating the number of gallons of fuels "sold or used in this state" by him during the preceding month, on forms to be furnished by the commissioner which are to contain such further information as he shall prescribe; the distributor is required to pay each month to the state treasurer "for the account of the purchaser or consumer" a tax of three cents on each gallon of "fuels sold or used" in this state during the preceding month, except fuels sold to the United States government, or by one licensed distributor to another, or transferred to some point outside the state to be sold or used there; and the commissioner is required to transmit monthly to the state treasurer such information "as shall show all taxes due from each distributor." § 654c. Any person who shall buy fuels and shall use them "for purposes other than in the propelling of motor vehicles using combustible type engines" over highways is entitled to a refund of the amount of the tax paid on such fuels. § 656c. All moneys received by the treasurer as taxes under the act, except refunds he has made, are required to be expended for the construction, maintenance or reconstruction of state highways. § 658c.

There can be no question under these provisions that the basis upon which the tax is laid is gasoline or other fuels sold or used for propelling motor vehicles over the highways. Moreover, while the distributor is not required to collect from the purchaser the

amount of tax levied on gasoline the latter buys, the tax is, by the express terms of the act, paid "for the account of the purchaser or consumer"; it is the purchaser who is entitled to a refund if the gasoline is not used for propelling motor vehicles over the highways; and there can be no doubt that the intent of the legislature was to impose an excise tax upon persons using the highways for the purpose of propelling motor vehicles upon them. *Spencer* v. *Consumers Oil Co.*, 115 Conn. 554, 162 Atl. 23, was decided under the statute of 1927, which imposed the tax upon the fuels "sold or used in this state"; Public Acts, 1927, Chap. 62, § 3; we held that a distributor who had reported to the commissioner of motor vehicles that it had collected the tax and held it for the state owed a debt to the state, and we added (p. 559): "It may well be said that it is more than a debt, for it is in essence a fund collected by it for and in behalf of the State." After the amendments of 1935, in *Ciarleglio* v. *Benedict & Co., Inc.*, 127 Conn. 291, 16 Atl. (2d) 593, in which the nature of the tax was directly involved, we said (p. 293): "Under Connecticut law the wholesaler is the collecting and remitting agency, and receives a fee therefor. He pays 'for the account of the purchaser.' " In *Texas Co.* v. *Blue Way Lines*, 93 Fed. (2d) 593, 594, the Circuit Court of Appeals in this circuit said of the tax imposed by our statutes as they appeared after the amendments of 1935, as well as of the tax imposed by a similar statute in Massachusetts: "Such gasoline tax is an excise tax on the consumer based on the use of the highways in the respective states." In *Commonwealth* v. *Wallace*, 294 Mass. 31, 200 N. E. 406, the Supreme Judicial Court of Massachusetts was considering a statute of that commonwealth almost identical with our law as it stood before the amendments of 1935; and it said (p. 34): "The tax laid by the

statute is an excise upon the sale or use of gasoline for propelling motor vehicles using combustion type engines upon or over the highways of the Commonwealth. In substance and effect it is an excise, levied for the benefit of travel upon highways, upon gasoline consumed to propel motor vehicles on highways."

The decision in *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86, 54 Sup. Ct. 575, is particularly significant on the question before us. In that case a statute of Iowa imposing a tax on motor fuel was held not to be unconstitutional. The statute imposed a license fee on all motor vehicle fuel used or disposed of in the state for any purpose and made any person using motor vehicle fuel within the state liable for the fee unless it had been previously paid; the distributor or importer of motor fuels was required to make a report each month to the state treasurer showing the number of gallons imported by him during the preceding month and to pay the amount of the license fee for that month, with the additional provision that he might deduct "three per cent of the invoiced gallonage . . . for evaporation and loss." He was also entitled to a refund on account of fuel destroyed by casualty not due to his fault before it was sold or used; and any purchaser of fuel who used it except in a motor vehicle was also entitled to a refund of the tax paid on that fuel. Laws of Iowa, 42 G. A. (1927), Chap. 248; Iowa Code (1931), Chap. 251-A1, § 5093-a1 et seq. The United States Supreme Court sustained the conclusion of the state court (p. 93) that the "law laid an excise upon the use of fuel for the propulsion of vehicles on the highways of the state. . . . The levy is not on property but upon a specified use of property. . . . Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent for that purpose." And, speaking of the provision for a

refund to the purchaser, the court later stated (p. 95):
" . . . the statutes properly construed lay no tax whatever upon distributors, but make of them mere collectors from users of motor vehicle fuel, and refund the tax only to that class of users upon whom no excise is intended to be laid. The distributor does not pay the tax; the user does."

Under our statute, the ultimate measure of the tax is the amount of gasoline used for the propulsion of motor vehicles upon our highways. Gasoline coming into the possession of distributors and not sold or used for that purpose is not within the intended scope of the tax. Consequently, gasoline lost by shrinkage in the amount imported or received by them by evaporation, temperature changes or like causes, or gasoline which escaped while being handled, is not taxable. In so far as Chapter 267 of the Public Acts of 1933 provided that a distributor might retain a percentage of the amount of the tax for its collection, it was in harmony with the basis upon which the tax is imposed; but in so far as it purported to permit a deduction on account of "shrinkage," it introduced into the law an alien element. The legislature did not intend to impose an excise tax upon the distributors based upon the right and power to sell or otherwise dispose of gasoline, measured by the amount of gasoline coming into their possession. See *Nashville, C. & St. L. Ry.* v. *Wallace,* 288 U. S. 249, 265, 53 Sup. Ct. 345; *Edelman* v. *Boeing Air Transport,* 289 U. S. 249, 53 Sup. Ct. 591; *Viquesney* v. *Kansas City,* 305 Mo. 488, 495, 266 S. W. 700; *Portland* v. *Kozer,* 108 Ore. 375, 380, 217 Pac. 833; *People* v. *Texas Co.,* 85 Colo. 289, 301, 275 Pac. 896; *State* v. *Sinclair Refining Co.,* 195 La. 288, 196 So. 349. It did not mean to impose a tax measured by a like method, to be paid by the distributor but ultimately to be borne by those using

the highways of the state. See *Gregg Dyeing Co.* v. *Query*, 286 U. S. 472, 480, 52 Sup. Ct. 631; *Monamotor Oil Co.* v. *Johnson*, supra. Had it intended to make a provision of the nature of either of these, a deduction for "shrinkage" and losses of like nature would have been within the theory of the law. As the matter stands, the passage of Chapter 267 of the Public Acts of 1933 seems explainable only upon the ground that it was the result of a misapprehension as to the basis upon which our statutes proceeded, and the repeal of the act may well have been due to a realization of that fact.

Any discussion of the claims of error as to matters in the determination of which § 655c was involved would be academic as far as the decision of this case is concerned, and it is the established policy of this court not to decide issues of that nature. *State ex rel. Foote* v. *Bartholomew*, 106 Conn. 698, 701, 138 Atl. 787; and see Reply of the Judges, 33 Conn. 586. We are not able to find any claims of error not falling within this class which it would serve any sufficient purpose to consider at this time.

There is error upon both appeals, the judgment is set aside and the case is remanded to be proceeded with according to law.

In this opinion the other judges concurred.